## FORSBERG v. SECURITY STATE BANK OF CANOVA.

(Circuit Court of Appeals, Eighth Circuit. November 1, 1926.)

No. 7366.

Bankruptcy ☞407(3)—Trading of nonexempt property for exempt property, in contemplation of bankruptcy, to secure additional exemption, held no ground for denying discharge (Rev. Code S. D. 1919, §§ 2659, 2660; Bankruptcy Act, § 14b [4], being U. S. Comp. St. § 9598).

Where bankrupt, within four months before filing voluntary petition, and while insolvent, and in contemplation of bankruptcy, traded nonexempt cattle for exempt hogs, to obtain additional exemption under Rev. Code S. D. 1919, §§ 2659, 2660, held that, in absence of extrinsic fraud, transaction was not intended to hinder, delay, or defraud creditors, within Bankruptcy Act, § 14b (4), being U. S. Comp. St. § 9598, and discharge in bankruptcy should not have been denied.

Appeal from the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

In the matter of Clinton R. Forsberg, bankrupt. From a decree denying discharge in bankruptcy after exceptions of the Security State Bank of Canova, a creditor, to referee's report recommending bankrupt's discharge, were sustained, bankrupt appeals. Reversed.

James A. Lyons and Baldwin & Lyons, all of Howard, S: D., and Davis, Lyon & Bradford, of Sioux Falls, S. D., for appellant.

Richard A. Bielski and Douglas S. Elliott, both of Sioux Falls, S. D., for appellee.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

BOOTH, Circuit Judge. Appellant, Clinton R. Forsberg, upon a voluntary petition filed February 15, 1923, in the district of South Dakota, was on the same day adjudicated a bankrupt. In due course he filed a petition for discharge. One of his creditors, the Security State Bank of Canova, S. D., filed specifications of objections to a discharge. The matter was referred to a special master, who made a report containing findings and conclusions, and a recommendation for a discharge. The bank filed exceptions to the report of the special master. The court sustained two of the exceptions and denied a discharge. This appeal followed.

The second specification of objection filed by the bank to the bankrupt's discharge was as follows:

"I. That the said bankrupt, Clinton R. Forsberg, should not be granted a discharge in bankruptcy because the said bankrupt, at a time subsequent to the first day of the fourth month immediately preceding the filing of the petition in bankruptcy herein, transferred to various parties, whose names are unknown to the objecting creditor, a large part of his property, consisting of horses, cattle, and hogs, with the intent to hinder, delay, and defraud his creditors. That, as this objecting creditor is informed and believes, the said bankrupt used the proceeds of the sale of said property to purchase certain sheep and other personal property, which could be and was claimed by said bankrupt as exempt to him in these bankruptcy proceedings, under the provision of section 2660 of the South Dakota Revised Code of 1919, providing for alternative exemptions in lieu of the $750 worth of personal property ordinarily exempt to a debtor. That said transfer of his personal property and the purchase of other personal property in lieu thereof by the bankrupt, and claimed as exempt herein, was done with intent to hinder, delay, and defraud his creditors."

The special master's finding of fact No. 11 and conclusion of law No. II cover the matters complained of. They read as follows:

"11. That the bankrupt contemplated filing his bankruptcy petition about November or December, 1922, and in fact filed his bankruptcy petition on February 15, 1923. About January 7, 1923, the bankrupt traded to one George Riley certain cattle for 21 head of sheep. The price of these sheep was $220, and the price of the cattle was $120. The bankrupt paid the difference of $100 in the purchase price of the sheep in cash. This cash was realized from the sale of hogs, which the bankrupt had sold shortly prior to this time. The cattle which the bankrupt traded to Riley were nonexempt property, and the hogs which he sold, from which he realized the $100 paid to Riley upon the purchase price of the sheep, were likewise nonexempt property, and under the laws of the state of South Dakota the bankrupt would be entitled to claim the sheep which he obtained in the trade as exempt, and the bankrupt in fact did claim the sheep as exempt, and they were set off to him as exempt. At the time the bankrupt traded for the sheep he knew that he was insolvent. He also knew and realized that the hogs and their proceeds were nonexempt, and that the cattle were likewise nonexempt, and that if he traded this property for the sheep he could claim the sheep as exempt. I am of the opinion that it can be clearly inferred from the evidence that this exchange was made so that the bankrupt could increase the amount of his alternative exemptions and claim the sheep as exempt. I find, however, that the bankrupt was not actuated by any fraudulent purpose, other than such fraud as might be implied from this intentional conversion of nonexempt assets into exempt assets."

"II. That the bankrupt, within the four months immediately preceding the filing of his bankruptcy petition, did not transfer, remove, or conceal any of his property with intent to hinder, delay, or defraud his creditors, and that the transfer and conversion of nonexempt property into exempt property, as found in the foregoing findings of fact, would not constitute a transfer of the bankrupt's property with intent to hinder, delay, or defraud his creditors, and that the second specification of objection has not been sustained."

The third and fifth exceptions to the special master's report relate to this finding and this conclusion. The court adopted the finding of fact No. 11 of the special master, except the last sentence, and found instead "that the bankrupt, in exchanging the nonexempt property for exempt property, referred to in said finding of fact No. 11," was "acting in pursuance to a scheme and design to defraud his creditors, and was actuated by the fraudulent purpose of taking his nonexempt assets beyond the reach of his creditors." A discharge was denied.

The statutes of South Dakota relating to exemptions in force at the time read as follows:

"2659. *Additional Exemptions.* In addition to the property mentioned in the preceding section, the debtor, if the head of a family, may, by himself, his agent or attorney, select from all other of his personal property, not absolutely exempt, goods, chattels, merchandise, money or other personal property, not to exceed in the aggregate seven hundred and fifty dollars in value; and, if a single person, not the head of a family, property as aforesaid of the value of three hundred dollars, which is also exempt, and must be chosen and appraised as hereinafter provided.

"2660. *Alternative Exemptions.* Instead of the exemptions of personal property granted in the preceding section, the debtor, if the head of a family, may select and choose the following property, which shall then be exempt, namely:

\* \* \* \* \*

"3. Two cows, five swine, two yoke of oxen, or one span of horses or mules, twenty-five sheep and their lambs under six months old, and all wool of the same, and all cloth or yarn manufactured therefrom, the necessary food for the animals hereinbefore mentioned for one year, either provided or growing, or both, as the debtor may choose; also one wagon, one sleigh, two plows, one harrow and farming machinery and utensils, including tackle for teams, not exceeding twelve hundred and fifty dollars in value."

The question presented by this appeal is whether Forsberg, in converting some of his nonexempt property into exempt property as set forth above in the special master's finding, by that transaction made a transfer of his property with intent to hinder, delay, or defraud his creditors within the meaning of section 14b (4) of the Bankruptcy Act (Comp. St. § 9598).

In Crawford v. Sternberg, 220 F. 73, 135 C. C. A. 641, two partners, each acting with the consent of the other, withdrew $200 apiece from the assets of the partnership on the day preceding its adjudication in bankruptcy, at a time when the partners and the

partnership were insolvent, but when no action was pending against any of them. The money was so taken for the purpose of claiming it as exempt under the laws of Arkansas, and it was scheduled and claimed as exempt in the individual schedules of the partners. The District Court made an order that each of the partners should pay over to the trustee of the partnership the sum of $200. On petition to revise this court reversed the order, saying:

"There is no claim of fraud in the severance of these sums of money into individual ownership, except that it took from partnership creditors a fund to which they could have resorted if it had remained partnership assets until placed in the custody of the law, and placed it among the individual assets, where it was subject to a claim of exemption, and that this was done for that purpose, and when it was known to the partners that they and the firm were insolvent, and in anticipation of early proceedings in bankruptcy. It is well settled that it is not a fraudulent act by an individual who knows he is insolvent to convert a part of his property which is not exempt into property which is exempt, for the purpose of claiming his exemptions therein, and of thereby placing it out of the reach of his creditors [citing cases]."

This court further said: "This has become an established principle, because the statutes granting exemptions have made no such exceptions, and because the policy of such statutes is to favor the debtors, at the expense of the creditors, in the limited amounts allowed to them, by preventing the forced loss of the home and of the necessities of subsistence, and because such statutes are construed liberally in favor of the exemption."

The rule thus laid down in regard to the conversion of nonexempt property into exempt property by an insolvent, for the purpose of claiming his exemptions therein, is recognized generally by the authorities. 27 C. J. p. 440, § 64; Remington on Bankruptcy (3d Ed.) § 1297; First Nat. Bank v. Glass, 79 F. 706, 25 C. C. A. 151 (C. C. A. 8); Huenergardt v. John S. Brittain Dry Goods Co., 116 F. 31, 53 C. C. A. 505 (C. C. A. 8); In re Irvin, 120 F. 733, 57 C. C. A. 147 (C. C. A. 8); In re Wilson, 123 F. 20, 59 C. C. A. 100; Fletcher v. Kennedy, 282 F. 622 (C. C. A. 8); O'Donnell v. Segar, 25 Mich. 367.

No local statute of South Dakota and no decision of its Supreme Court opposed to this rule has been called to our attention, nor have we found such; but its courts in accord with the courts of other states hold that exemp-

tion laws are to be liberally construed. Linander v. Longstaff, 7 S. D. 157, 63 N. W. 775. In the Glass Case this court, speaking by Judge Sanborn, said:

"An insolvent debtor may use with impunity any of his property that is free from the liens and the vested equitable interests of his creditors to purchase a homestead for himself and his family in his own name. If he takes property that is not exempt from judicial sale and applies it to this purpose, he merely avails himself of a plain provision of the Constitution or the statute enacted for the benefit of himself and his family. He takes nothing from his creditors by this action in which they have any vested right. The Constitution or statute exempting the homestead from the judgments of creditors is in force when they extend the credit to him, and they do so in the face of the fact that he has this right. Nor can the use of property that is not exempt from execution to procure a homestead be held to be a fraud upon the creditors of an insolvent debtor, because that which the law expressly sanctions and permits cannot be a legal fraud."

The suggestion of counsel in the case at bar that, though the property thus acquired by the bankrupt might be exempt, yet he should be denied discharge in bankruptcy because of so acquiring it, is not persuasive. We do not think one should be penalized for merely doing what the law allows him to do. In Amundson v. Folsom, 219 F. 122, 135 C. C. A. 24 (C. C. A. 8), a case relied upon by appellee, suit was brought by Folsom, the trustee in bankruptcy of the partnership, Davis & Son, and of the two individual partners, against defendant Amundson, to set aside a transfer of a stock of merchandise and fixtures alleged to have been made with intent to hinder, delay, and defraud creditors. The special master and the District Court both found that there was a scheme on the part of Davis & Son in which Amundson knowingly aided and participated, to put the partnership assets beyond the reach of its mercantile creditors. There was a conversion of nonexempt property into exempt; but there was much more than that. There was a dissolution of the partnership, a transfer of the partnership property to one partner for a meager consideration, and then an exchange by him of his personal property for real estate with the defendant, who was president of a bank which was one of the creditors of the partnership, and which received payment of its debt as part of the transaction. The partner who had thus obtained the real estate moved a structure, formerly a

boathouse, upon the land, went into occupation, and claimed a homestead. The conversion of nonexempt property into exempt was a mere incident in the scheme to defraud creditors.

In Kangas v. Robie (C. C. A.) 264 F. 92, another case relied upon by appellee, the facts were these: Kangas was a merchant; he was doing a good business, and was solvent; at a certain time he ceased making payments on his trade obligations, ceased making daily deposits in the bank, but instead kept the proceeds of his sales in his safe or on his person, until he accumulated $13,000. He then secretly and hastily bought an apartment building containing four apartments in a town 35 miles distant, moved his furniture into one of the apartments, and claimed the whole building as his homestead; the price of the building was $17,000. He paid $13,000 in cash and gave a mortgage for $4,000. This withdrawal of $13,000 from his business and putting it into an alleged homestead rendered him insolvent. The referee in bankruptcy denied the claimed exemption. He found that there was a fraudulent attempt on the part of Kangas to put the money realized from the collection of his accounts and the sale of merchandise beyond the reach of creditors from whom he received said merchandise on credit. The District Judge found that Kangas "set out with the corrupt purpose and design of defrauding his creditors; * * * that he made the purchase, moved into the property, and is now claiming it as a homestead to accomplish that purpose and design." The action of the referee was approved.

The case was brought to this court on a petition to revise. The court said in its opinion: "This is the petitioner's case, and on the facts thus presented as the basis of his right to be heard and obtain here what was denied him by the bankruptcy court, he asserts that there was error in the matter of law in denying his claim and refusing to set off the property to him as his homestead."

The court expressly recognized the rule laid down in the Crawford Case, saying: "The right to exemption cannot be denied solely on account of the fact that the purchase price paid, or other property given in exchange for the property claimed as exempt, was, in either contingency, nonexempt, although the necessary result would be that nonexempt property theretofore belonging to the debtor would thus be put beyond the reach of his creditors."

But the court said further in reference to the case in hand: "The situation which petitioner presents to us is a confession of bad faith on his part, that the purpose with which he took title to the property which he now claims as exempt was to defraud his creditors, and we must decline to give it our approval."

It is thus seen that in the Kangas Case both the referee and the District Judge found facts constituting fraud apart and distinct from the mere transfer of nonexempt property into exempt. No review in this court of the facts was asked or could be had, since the case came up on petition to revise. In the case at bar the situation was entirely different. The bankrupt testified that, when he found that he could not make settlement with his creditors, he determined that he would have to go through bankruptcy; that he knew that under the alternative exemption statute he could claim 2 horses, 2 cows, 5 hogs, and his farm machinery, as exempt in bankruptcy; that he was advised that he would be entitled to claim sheep up to 25 as exempt also. With this knowledge and advice the bankrupt converted by transfer some of his cattle and hogs into sheep. This in itself did not constitute fraud. Nor is the fact that he had not owned sheep theretofore significant of fraud. He was insolvent before the transfer. Naturally, if the law allowed as exempt only 5 hogs and 4 head of cattle, and he had more than that, he would convert some of the hogs and cattle into sheep, of which he had none. This was simply doing what this court said in the Crawford Case could rightfully be done. There is no evidence and so suggestion that in the trade full value was not received.

We find in the record no evidence that the bankrupt was actuated by any fraudulent purpose, unless such purpose should be implied from his intentional conversion of nonexempt assets into exempt assets. In our opinion no such implication exists. We think that, before the existence of such fraudulent purpose can be properly found, there must appear in evidence some facts or circumstances which are extrinsic to the mere facts of conversion of nonexempt assets into exempt and which are indicative of such fraudulent purpose.

Our conclusion is that the transfer of property in the instant case, being but a step in the conversion of nonexempt assets, no extrinsic facts and circumstances indicating fraud being present, did not constitute a transfer of the bankrupt's property with intent to hinder, delay, or defraud creditors within the meaning of section 14b (4) of the Bankruptcy Act, and that a discharge should not have been denied on that ground.

Decree reversed.