In the Matter of Harlan WHITE, Bankrupt.

In the Matter of Shirley Louise WHITE, Bankrupt.

Nos. 21338, 21339.

United States District Court
N. D. California, N. D.

Aug. 13, 1963.

Frederick L. Hilger, Eureka, Cal., for bankrupts-petitioners.

Max H. Margolis, James M. Conners, San Francisco, Cal., and Francis B. Mathews, Eureka, Cal., for trustee-respondent.

HALBERT, District Judge.

Bankrupts, husband and wife, have filed this petition for review [Title 11 U.S.C. § 67, sub. c, § 39, sub. c of the Bankruptcy Act] of the Referee's order affirming a decision of the trustee denying certain claims of exemption under the California exemption statutes. Each of the bankrupts claimed as exempt the sum of $1,000 in the Humboldt Federal Savings and Loan Association, and $1,500 in the Government Service Credit Union. The basis for the exemption claim of the monies in the savings and loan association appears in California Financial Code, § 11000 [1] and California Code of Civil Procedure, § 690.21 [2]. The credit union deposits are claimed to be exempt under the provisions of California Financial Code, § 15406 [3].

The Referee found that the bankrupts were, at the time of their adjudication in bankruptcy, operating a supermarket as co-partners. At all times during their operation of the supermarket, they were insolvent, and they realized that such insolvency would not allow them to continue operation of the supermarket indefinitely. They continued to operate the supermarket, however, until the receiver took over such operation after they had filed their petitions in bankruptcy. For some period of time prior to the actual filing of their petitions, the bankrupts had contemplated bankruptcy and had consulted with their attorney in that regard. They had received advice and information with reference to possible exemptions under the California statutes. Despite their intention to terminate their business affairs and to file petitions in bankruptcy, they continued their business and continued to request and receive credit. At the time of their determination to file petitions in bankruptcy, the bankrupts did not have in their possession monies sufficient to take advantage of either of the above noted exemptions. After receiving information and advice from counsel concerning the ordinary applicability of said exemptions, the bankrupts continued to acquire on credit merchandise valued in excess of $17,000. The items thus acquired were sold in the ordinary course of business, and the proceeds derived from such sales enabled the bankrupts to deposit sufficient monies in the savings and loan association and the credit union to seek to take full advantage of the exemptions offered. Concomitant with said deposits was the fact that the monies thus received were not used to pay creditors who had supplied certain of the goods sold.

The Referee concluded that the above circumstances constituted actual fraud; that all monies involved in these transactions were community property, notwithstanding an attempt by the husband to make a gift of said funds to the wife as her separate property. (This attempted gift constituted a voidable transfer under § 67, sub. d(3) of the Bankruptcy Act [Title 11 U.S.C. § 107, sub.

1. "Every federal savings and loan association incorporated under the provisions of the Home Owners' Loan Act of 1933 (12 U.S.C.A. § 1461), as now or hereafter amended, and the holders of shares or share accounts issued by any such association, respectively, have all the rights, powers, and privileges, and are entitled to the same exemptions and immunities granted, respectively, to savings and loan associations organized under the laws of this State and to the holders of investment certificates, membership shares, or guarantee stock of domestic associations."

2. "Shares of stock in any building and loan association to the value of one thousand dollars."

3. "The shares and certificates for funds received of members of any credit union and all the accumulation on such shares and certificates are exempt from sale on execution and proceedings supplementary thereto, to the amount of one thousand five hundred dollars ($1,500)."

d(3) ] ); and that the deposits in the name of the wife and each of the two children (presumably as tenants in common) did not fall under the exemption statutes regarding personal exemptions. The bankrupts challenge each of these conclusions of law.

The leading case in this substantive area is In re Dudley, D.C., 72 F.Supp. 943, aff'd sub nom. Goggin v. Dudley, 9 Cir., 166 F.2d 1023. That case set forth the proposition that an investment by a heavily insolvent debtor in exempt building and loan association stock only a few days before the filing of a petition in bankruptcy is not, *ipso facto*, fraudulent, and that the exemption is allowable. The appellate affirmance of Dudley sets forth the rule for this circuit, and is binding upon this Court. The bankrupts also point to similar holdings in Forsberg v. Security State Bank of Canova, 8 Cir., 15 F.2d 499, 49 A.L.R. 913; and Crawford v. Sternberg, 8 Cir., 220 F. 73. As an example of cases involving actual fraud, the bankrupts point to In re Gerber, 9 Cir., 186 F. 693 (where the bankrupt opposed an existing petition by his creditors for his adjudication as an involuntary bankrupt, while at the same time disposing of and secreting his cash, and finally consented to an adjudication provided the creditors would dismiss the pending petition and procure other creditors to file a new one, thus seeking in the interim to use the secreted money in the declaration of a homestead), and seek to distinguish that finding of actual fraud from the instant case. In this connection, Gardner v. Johnson, 9 Cir., 195 F. 2d 717 (where a grantor who fraudulently conveyed realty to his daughter was held to have abandoned his prior claim of homestead, and when the conveyance was set aside, was denied the exemption), is instructive.

The basis of the action of the trustee in denying the instant claims, and of the affirmance of that action by the Referee, appears in Sampsell v. Anches, 9 Cir., 108 F.2d 945; Kangas v. Robie, 8 Cir., 264 F. 92; and In re Lynn, Bankruptcy No. 132778–TC, records of the United States District Court, Southern District of California, Central Division. Each of these cases involved a finding of actual fraud. Sampsell involved a scheme by the bankrupt whereby he purchased

"quantities of merchandise on credit without any intent to pay the creditors from whom he had purchased the goods but, on the contrary, with intent to quickly sell the goods for cash and appropriate to his own uses the cash thus procured and, then, to go into bankruptcy." (108 F.2d at 946)

Although no exemption statutes were involved in Sampsell, that case is instructive on the question of actual fraud. Kangas involved a bankrupt who ceased his usual custom of making deposits in his usual bank account, stopped making payments on his trade obligations, put the proceeds received for merchandise sold in his safe or retained the currency in his possession, sold his entire inventory, and applied the total proceeds thereof to the acquisition of a purportedly exempt homestead. The bankruptcy court refused to allow the exemption. The bankrupts in the instant case attempt to distinguish Kangas by the totality of the conversion, and by the confession of bad faith by the bankrupt in that case. Neither of those distinctions are impressive to this Court. Lynn involved a fraudulent transfer of a note and deed of trust to a sister of the bankrupt for a third of its value, and a following deposit of the proceeds in a savings and loan association. Lynn was decided by a judge of the same district and division from which emanated the rule in Dudley, and Lynn specifically distinguished Dudley by its finding of actual fraud.

The bankrupts also make note of the fact that the rule of Kangas was held inapplicable in a subsequent decision of the same Court of Appeals, in Forsberg, supra, and attempt to apply the Forsberg holding to the instant case. Forsberg involved the exchange by a farmer-rancher of non-exempt cattle and

hogs for exempt sheep, prior to filing in bankruptcy. In this connection, the bankrupts apparently misinterpret the holding of the Referee. The Referee found actual fraud not solely on the basis of the conversion of non-exempt assets into exempt, but rather on the basis of the continued request for and acquisition of credit in order to accomplish such conversion. There is no question but that a bankrupt may convert his *existing* non-exempt property into exempt (See Dudley and Forsberg, supra), but such a privilege does not afford a basis for fraudulently acquiring additional property in order to take advantage of the exemption statutes. Such was the Referee's holding, and such, in this Court's opinion, is the state of the law.

In determining the availability of state exemptions in bankruptcy proceedings, state law is applicable (Esten v. Cheek, 9 Cir., 254 F.2d 667; Gardner v. Johnson, supra; and see In re Mulkins & Crawford Elec. Co., D.C., 145 F.Supp. 146). In this connection, California Civil Code, § 1572 is pertinent.[4] Specific reference was made to that statute in Sampsell, supra, at page 946 of 107 F.2d:

> "A promise to pay for goods purchased without an intention to do so is a fraud especially denounced by the statutes of California (Cal.Civ. Code §§ 1572, 1710) and in most jurisdictions such a promise is itself fraudulent."

Thus, the Referee's conclusion that the factual situation herein involved actual fraud is supported by the California statutes. There is factual support for his finding that the bankrupts acquired credit without intending to repay it.

This Court, therefore, will not overturn the Referee's determination (See: General Order in Bankruptcy No. 47, 11 U.S.C.A. following § 53; and Costello v. Fazio, 9 Cir., 256 F.2d 903).

In short, the instant case is analogous to a situation wherein a debtor requests a loan from a bank, secures such a loan, immediately invests the proceeds of that loan in exempt property, and files a petition in bankruptcy. This latter course of action would, in the opinion of this Court, constitute grounds for the denial of discharge in bankruptcy, under the provisions of § 17, sub. a(2) of the Bankruptcy Act [Title 11 U.S.C. § 35, sub. a(2)] (See, e. g., In re Hadden, 6 Cir., 142 F.2d 896; Watts v. Ellithorpe, 1 Cir., 135 F.2d 1; Personal Finance Co. of Colorado v. Martinez, 10 Cir., 115 F.2d 226; and O'Brien v. Appling, 133 Cal. App.2d 40, 283 P.2d 289). Since the instant situation does not, on the present record, appear to be as flagrant as the above analogy, nothing said here should be construed as a ruling (one way or the other) on the matter of the propriety of the discharge of the bankrupts in this case. If and when the matter of the discharge of the bankrupts comes up, it will have to be considered initially by the Referee on the record then before him.

As a factor which has influenced the Court in its decision, here it seems appropriate to direct attention to the law that a court of bankruptcy is a court of equity (Heiser v. Woodruff, 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970; S. E. C. v. United States Realty & Improvement Co., 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293; Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281; Spach v. Bryant, 5 Cir., 309 F.2d 886; and Hull

---

4. "Actual fraud, within the meaning of this Chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract:

"1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

"2. The positive assertion, in a manner not warranted by the information of the

person making it, of that which is not true, though he believes it to be true;

"3. The suppression of that which is true, by one having knowledge of belief of the fact;

"4. A promise made without any intention of performing it; or,

"5. Any other act fitted to deceive."

v. Powell, 9 Cir., 309 F.2d 3); that the parties in a bankruptcy proceeding should act with *uberrima fides*; and that participants in a bankruptcy action are to be judged according to standards that are "stricter than the morals of the market place" (Acme Distributing Co. v. Collins, 9 Cir., 247 F.2d 607; and see First National Bank of Portland v. Dudley, 9 Cir., 231 F.2d 396; Lines v. Falstaff Brewing Co., 9 Cir., 233 F.2d 927; and Bookey v. King, 9 Cir., 236 F.2d 871).

A subsidiary question is raised as to the effect of the husband-wife relationship of the bankrupts. A short answer to such a question is found in the status of the bankrupts as co-partners. Since the Referee has found that the actions of the bankrupts constituted actual fraud, and since their status as co-partners alleviates any question of intraspousal immunities from liability for fraud by the other spouse, no merit is found in this subsidiary question, and the Court will not consider it further.

The bankrupts have moved to strike certain portions of the record which has been included by the Referee on this petition for review. They contend that said portions are completely immaterial and irrelevant to the present issues. The trustee, in response, indicates that a reviewing court may take judicial notice of any and all records in the case under consideration. In the opinion of this Court, the bankrupts' motion to strike goes to the weight of the records as evidence, rather than to their admissibility. Even though the records which are the subject of the dispute are of little value, if any, bankrupts' motion to strike will for the reason noted be denied.

It Is, Therefore, Ordered that bankrupts' motion to strike be, and the same is, hereby denied;

And It Is Further Ordered that the order of the Referee affirming the trustee's denial of the bankrupts' claimed exemptions be, and the same is, hereby affirmed.