**In the Matter of Delbert McKEAG and Carolyn McKeag, Debtors.**

**Bankruptcy No. BK87–71.**

United States Bankruptcy Court,
D. Nebraska.

June 16, 1987.

LeRoy Anderson, North Platte, Neb., for debtors.

C. Kenneth Spady, Ogallala, Neb., for First Nat. Bank of Ogallala.

## MEMORANDUM OPINION

TIMOTHY J. MAHONEY, Bankruptcy Judge.

On June 8, 1987, an evidentiary hearing was held on the confirmation of this Chapter 12 plan, combined with a valuation

hearing and a hearing on objections to certain exemptions. Appearing on behalf of the debtors was LeRoy Anderson of North Platte, Nebraska. Appearing on behalf of the First National Bank of Ogallala was C. Kenneth Spady of Ogallala, Nebraska. This plan cannot be confirmed for the reasons outlined below. This Court does, by this Opinion, determine the value of the property and directs certain amendments affecting exempt property.

1. *Amendment*

The plan is being amended re Metropolitan interest rate. Objections to such change may be filed.

2. *Value*

As between First National Bank-Ogallala and debtors, the Court, after an evidentairy hearing, finds the income approach used by debtor's appraiser to more likely approach the value of the land than the comparable sale approach used by creditor. Although the professional backgrounds of the appraisers differed greatly, the analysis of the productive capacity of the land, compared with the "comparables", as well as the detailed analysis of the water and irrigation facilities convinces this Court that even with reasonable adjustments, the "comparables" are not useful to determine value. Therefore, the Court concludes that the value of the land is $359,143.02, subject to reduction or increase based upon actual sale of the parcel identified as the hired hand place.

3. *Annuity*

Several months prior to filing Chapter 12, debtors withdrew cash value in life insurance policies and purchased an annuity contract. Within days prior to filing Bankruptcy, debtor's borrowed money from individuals, gave notes, security interests and mortgages as consideration and security, invested the loan proceeds and their own funds from savings in an annuity contract. Total investment $138,000.

The value of the property securing the loan is not in excess of the loan proceeds. None of the cash value of the life insurance policies, the savings accounts or the personal and real property given as security were collateral for the objecting bank's loans.

The bank specifically objects to granting liens on debtor's property immediately prior to Bankruptcy, purchasing exempt annuities, and proposing, in the Chapter 12 plan, to repay the lenders in full and retain the collateral. Bank claims it and other unsecured creditors are not receiving the amount they are entitled under § 1225(a)(4), which requires that a plan cannot be confirmed unless the unsecured claims are paid the amount they would receive under a Chapter 7 liquidation. In addition, the bank argues that the action of the debtors indicate a lack of good faith under § 1225(a)(3).

■ This Court concludes, as a matter of law, that creating exempt property by borrowing against non-exempt property and granting liens on the non-exempt property, prior to filing Chapter 12, is not bad faith and is not forbidden by the Code. See: *Forsberg v. Security State Bank of Canova*, 15 F.2d 499 (8th Cir.1926); *In re: Johnson*, 8 B.R. 650 (Bkrtcy.Ct.S.D.1981). See also Notes of Committee on the Judiciary, Senate Report 95–989, comments on 11 U.S.C. § 522.

If converting non-exempt assets to exempt assets is not fraudulent, there still remains the question of whether the plan has been filed in good faith. This requires an analysis of the plan and the assets available for distribution if this case was a liquidation.

In Chapter 7, the annuity principal and income would be exempt, but debtors would have lost their operation through liquidation.

The Chapter 12 plan proposes payment of approximately $904,000 on debts of $1,055,000 over 20 years. The allowed secured claims will be paid in full and the allowed unsecured claims may receive some payment. The plan does not appear to provide for the application of all disposable income to unsecured claims during the first three years of the plan, § 1225(b)(1)(B).

Debtor, Delbert McKeag, testified that it was his intent to use the annuity principal and income as operating capital to ensure the plan was adequately funded without resort to third party lenders. However, the plan is silent with regard to such proposal. There is no evidence before the Court that the plan needs the input of the annuity principal or interest to be feasible. There is no evidence of the type of annuity contract, its terms, withdrawal rights, terms of payment, estimated income stream, use to which the income stream shall be applied.

 Without such information, the Court is unable to determine the good faith issue. "Good faith", as used in Chapter 12, the Court construes to mean "fairness". Chapter 12 permits debt obligations to be rewritten. This may mean secured debt is written down to present value of the collateral, and the terms of the obligation are modified, all to the benefit of the debtor. Debtor is permitted to keep and use the collateral. Debtor is permitted to write off most unsecured debt and start over fresh.

Debtor's only obligation in return for such benefit is a promise to work hard and pay the "new" debt. However, because of the unlimited annuity exemption under Nebraska law, debtors who legitimately plan to shelter assets prior to filing Bankruptcy may not only keep property subject to liens during the Chapter 12 proceeding, but they may keep many thousands of dollars in the annuity, with no risk.

This Court believes the purpose of exemption statutes is to permit a debtor in financial stress to keep an amount of property the legislature deems appropriate for a fresh start. This Court does not believe the purpose of the exemption statute is well served by permitting a debtor to set aside for personal use thousands of dollars, file Chapter 12, rewrite debt obligations, keep collateral, write off unsecured debt and fail to apply any of the income from the "annuity" to the operating Chapter 12 plan. Such a result is not fair to the creditors who relied on debtor's ability to repay debt as evidenced by all of his assets, his income generating probability and the collateral he subjected to the creditor's security interest. If this was permitted, debtors would receive all benefits and creditors would receive all of the risk. If Chapter 12 is truly a "workout" statute, both sides should share some benefit and some risk.

 Therefore, in a fact situation as here, a Chapter 12 plan will not be confirmed unless specific information about the "exempt" property is provided to the Court and the Court is able to conclude that debtor's are willing and able to apply a portion of the "exempt" income or principal to the plan. If debtors are unwilling to do so, this Court shall conclude the plan is filed in bad faith. The result will be that the debtor's will be permitted to keep property which is exempt under Nebraska statutes, but will not be permitted to obtain the benefits of Chapter 12.

Plan must be amended to provide specific information about annuity and to provide for application of a portion of annuity income and/or principal to Chapter 12 plan, and to apply all disposable income over a three year period to the plan.