ARNOLD, Circuit Judge,
dissenting.
The Court reaches a result that appeals to one’s general sense of righteousness. I believe, however, that it is contrary to clearly established law, and I therefore respectfully dissent.
Dr. Tveten has never made any bones about what he is doing, or trying to do, in this case. He deliberately set out to convert as much property as possible into a form exempt from attachment by creditors under Minnesota law. Such a design necessarily involves an attempt to delay or hinder creditors, in the ordinary, non-legal sense of those words, but, under longstanding principles embodied both in judicial decisions and in statute, such a purpose is not unlawful. The governing authority in this Court is Forsberg v. Security State Bank, 15 F.2d 499 (8th Cir.1926). There we said:
It is well settled that it is not a fraudulent act by an individual who knows he is insolvent to convert a part of his property which is not exempt into property which is exempt, for the purpose of claiming his exemptions therein, and of thereby placing it out of the reach of his creditors.
Id. at 501. Thus, under the controlling law of this Circuit, someone who is insolvent may convert property into exempt form for the very purpose of placing that property beyond the reach of his creditors.
A debtor’s right to make full use of statutory exemptions is fundamental to bankruptcy law. To unsecured creditors, a debtor’s conversion of his assets into exempt categories of property will always appear unfair, but this apparent unfairness is simply a consequence of the existence of exemptions under the jurisdiction’s bankruptcy law. In an early case in this Circuit, Judge Walter H. Sanborn, one of the patriarchs of this Court, explained:
An insolvent debtor may use with impunity any of his property that is free from the liens and equitable interests of his creditors to purchase a homestead.... If he takes property that is not exempt from judicial sale and applies it to this purpose, he merely avails himself of a plain provision of the constitution or the statute enacted for [his] benefit.... He takes nothing from the creditors by this action in which they have any vested right. The constitution or statute exempting the homestead from the judgments of creditors is in force when they extend the credit to him, and they do so in the face of the fact that he has this right. Nor can the use of property that is not exempt from execution to procure a homestead be held to be a fraud upon the creditors ..., because that which the law expressly sanctions and permits cannot be a legal fraud.
First National Bank of Humboldt v. Glass, 79 F. 706, 707 (8th Cir.1897) (emphasis added)
The same principle was confirmed by Congress when it enacted the Bankruptcy Code of 1978. The report of the House Judiciary Committee states as follows:
As under current law, the debtor will be permitted to convert nonexempt property into exempt property before filing a bankruptcy petition. See Hearings, Pt. III, at 1355-58. The practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled under the law.
H.R.Rep. No. 595, 95th Cong., 2d Sess. 361, reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6317. The same language appears in S.Rep. No. 989, 95th Cong., 2d Sess. 76 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5862. In the hearings referred to in the House Committee report, two federal judges, concerned about the “outrageous” implications of ex *878 isting law, specifically urged Congress to incorporate provisions in the new Bankruptcy Code which would make pre-bank-ruptcy conversion of assets fraudulent as a matter of federal law. See Hearings on H.R. 31 and H.R. 32 Before the Subcomm. on Civil and Constitutional Rights of the House Comm, on the Judiciary, 94th Cong., 1st & 2nd Sess., ser. 27, pt. 3, pp. 1355-58 (1975-76). The fact that Congress declined to change existing law, when presented with the same objections to the propriety of debtor tactics like Tveten’s that the Court now expresses, indicates that Congress did not intend § 727(a)(2) to proscribe such conduct. The House Report’s language plainly says that debtors may convert nonexempt property into exempt property, that doing so is not fraudulent, and that debtors may make “full use” of any applicable exemption. Recent cases in our Court have reiterated this principle. E.g., In re Lindberg, 735 F.2d 1087, 1090 (8th Cir.), cert. denied sub nom. Armstrong v. Lindberg, 469 U.S. 1073, 105 S.Ct. 566, 83 L.Ed.2d 507 (1984).
To be sure, if there is extrinsic evidence of fraud, or of a purpose to hinder or delay creditors, discharge may and should be denied, but “extrinsic,” in this context, must mean something beyond the mere conversion of assets into exempt form for the purpose of putting them out of the reach of one’s creditors. If Tveten had lied to his creditors, like the debtor in McCormick v. Security State Bank, 822 F.2d 806 (8th Cir.1987), or misled them in some way, like the debtor in In re Reed, 700 F.2d 986 (5th Cir.1983), or transferred property for less than fair value to a third party, like the debtor in Ford v. Poston, 773 F.2d 52 (4th Cir.1985), we would have a very different case. There is absolutely no evidence of that sort of misconduct in this record, and the Court’s opinion filed today cites none.
One is tempted to speculate what the result would have been in this case if the amount of assets converted had been $7,000, instead of $700,000. Indeed, the large amount of money involved is the only difference I can see between this case and Forsberg. It is true that the Forsberg opinion referred to “the limited amounts allowed to” debtors by exemptions, 15 F.2d at 501, but whether exemptions are limited in amount is a legislative question ordinarily to be decided by the people’s elected representatives, in this case the Minnesota Legislature.[1] Where courts punish debtors simply for claiming exemptions within statutory limits, troubling problems arise in separating judicial from legislative power. As Judge Kishel explained in his excellent opinion in In re Johnson, 80 B.R. 953 (Bankr.D.Minn. 1987)[2]:
The legislative branch alone determines what is necessary ... to meet a debtor’s needs, by establishing the nature and value of the property subject to claims exemption.... To deny discharge for a debtor’s non-fraudulent invocation of these protections is, overtly or covertly, to make a political and/or value judgment on these legislative determinations. To equate a non-fraudulent intent to ‘place assets beyond the reach of creditors’ with an invidious intent to ‘hinder or delay creditors’ is ultimately to frustrate statutory exemption rights by causing a chilling effect on the full exercise of those rights. A court which causes such a chilling effect is, in a very real sense, invading legislative prerogatives by substituting its own judgment for that of the legislature.
At 963 (footnote omitted).
If there ought to be a dollar limit, and I am inclined to think that there should be, *879 and if practices such as those engaged in by the debtor here can become abusive, and I admit that they can, the problem is simply not one susceptible of a judicial solution according to manageable objective standards. A good statement of the kind of judicial reasoning that must underlie the result the Court reaches today appears in In re Zouhar, 10 B.R. 154 (Bankr.D.N.M. 1981), where the amount of assets converted was $130,000. The Bankruptcy Court denied discharge, stating, among other things, that “ ‘there is a principle of too much; phrased colloquially, when a pig becomes a hog it is slaughtered.’ ” Id. at 157. If I were a member of the Minnesota Legislature, I might well vote in favor of a bill to place an over-all dollar maximum on any exemption.[3] But sitting as a judge, by what criteria do I determine when this pig becomes a hog? If $700,000 is too much, what about $70,000? Would it matter if the debtor were a farmer, as in Forsberg, rather than a physician? (I ask the question because the appellee creditor’s brief mentions the debtor’s profession, which ought to be legally irrelevant, several times.)
Debtors deserve more definite answers to these questions than the Court’s opinion provides. In effect, the Court today leaves the distinction between permissible and impermissible claims of exemption to each bankruptcy judge’s own sense of proportion. As a result, debtors will be unable to know in advance how far the federal courts will allow them to exercise their rights under state law.
Where state law creates an unlimited exemption, the result may be that wealthy debtors like Tveten enjoy a windfall that appears unconscionable, and contrary to the policy of the bankruptcy law. I fully agree with Judge Kishel, however, that
[this] result ... cannot be laid at [the] Debtor’s feet; it must be laid at the feet of the state legislature. Debtor did nothing more than exercise a prerogative that was fully his under law. It cannot be said that his actions have so tainted him or his bankruptcy petition as to merit denial of discharge.
Johnson, supra, at 963 (footnote omitted). I submit that Tveten did nothing more fraudulent than seek to take advantage of a state law of which the federal courts disapprove.
I would reverse this judgment and hold that the debtor’s actions in converting property into exempt form do not bar a discharge in bankruptcy.

. In First Natl Bank of Humboldt, supra, the debtor’s homestead was originally in Nebraska, which by statute limited the homestead exemption to land worth $2,000. The debtor sold his homestead for $6,000 and used the money to buy a new home in Kansas, where the homestead exemption was unlimited in dollar amount. The debtor had this new Kansas homestead conveyed to his wife. See 79 F. at 706-07. This tactic succeeded, and the creditor’s attempt to reach the Kansas land was rebuffed by this Court.

. Counsel in this case have advised us that an appeal in Johnson is now pending in the District Court.

. There is some irony in the fact that the exemption sought by the debtor in this case, that for benefits under annuities or life-insurance policies issued by fraternal associations, has been held unconstitutional under two provisions of the Minnesota Constitution. One such provision, Article 1, Section 12, provides that "[a] reasonable amount of property shall be exempt....” The Supreme Court of Minnesota has held that the exemption statute involved in the present case is unconstitutional precisely because it contains no dollar limit. In re Tveten, 402 N.W.2d 551, 556-58 (Minn.1987). So the principle of limitation has been upheld, the debtor has in any event lost the exemption he sought, but he also loses his discharge under today’s decision.