# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

———

No. 98-6061NE

———

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| William M. Barger | * | |
| and RanDee L. Barger | * | |
| | * | |
| Debtors. | * | |
| | * | |
| William M. Barger | * | Appeal from the United |
| and RanDee L. Barger | * | States Bankruptcy Court |
| | * | for the District of Nebraska |
| Appellants, | * | |
| | * | |
| v. | * | |
| | * | |
| Hayes County Non-Stock Co-op | * | |
| | * | |
| Appellee. | * | |

———

Submitted: March 3, 1999
Filed: March 17, 1999

———

Before KRESSEL, SCHERMER, and DREHER, Bankruptcy Judges.

———

DREHER, Bankruptcy Judge

Debtors, William and Randee Barger ("Debtors"), own a farm in Hitchcock County, Nebraska. Their financial difficulties apparently began in the mid-1980s. In 1986 they filed a Chapter 11 bankruptcy case. In April, 1990, the bankruptcy court dismissed that case because it determined the plan of reorganization was not feasible. One month later Debtors

filed a Chapter 12 case. This attempt to reorganize also failed, and Debtors voluntarily dismissed the case in late 1995. One month later, on October 23, 1995, Debtors commenced the instant Chapter 12 case. Debtors have, thus, been under the protection of the bankruptcy court for most of the past thirteen years. Now, nearly four years into this third bankruptcy case, Debtors have yet to propose a confirmable Chapter 12 plan.

This dispute arises out of Debtors' purchase, in or about 1994, of seed and fertilizer from the Appellee, Hayes County Non-Stock Co-op ("Co-op"). Debtors expressed dissatisfaction with the product and refused to pay for the goods. While the dispute was pending, Debtors agreed to provide the Co-op with a security interest in their 1994 crop. The Co-op duly perfected its security interest. However, in violation of the security agreement, Debtors undermined the Co-op's secured position by transporting the 1994 crop out of Nebraska and selling it in Colorado. Debtors did not tell the Co-op that they had done so. Nor did they remit any of the proceeds of this sale to the Co-op. Rather, Debtors used the proceeds for ongoing current operating expenses on their farm.

In the present bankruptcy case, Debtors have proposed seven different plans of reorganization. In each, Debtors have either treated the Co-op as wholly unsecured or as minimally secured, or they have ignored the Co-op's claim altogether. They have also commenced an adversary proceeding seeking to resolve the dispute over the quality of the seed and fertilizer. The Co-op has defended in the adversary proceeding and has objected to confirmation of all such plans. The Co-op contends that the Debtors' plans have not been proposed in good faith and the bankruptcy court[1] has agreed. Throughout these proceedings, the bankruptcy court has made crystal clear that it would not confirm any plan that did not propose to make the Co-op whole or that was not consented to by the Co-op.[2]

_____

[1]The Honorable Timothy J. Mahoney, Chief Judge, United States Bankruptcy Court for the District of Nebraska.

[2]For example, on March 1, 1996, the court stated: "the reason the court will dismiss this case is that it appears that the two creditors had a security interest in the 1994 crop and proceeds and such secured interest was ignored by the debtors and proceeds of the crop were used, among other things, for general operations of the debtors farm. Such

This is Debtors' second appeal to this Bankruptcy Appellate Panel. In the first appeal, the court sustained the bankruptcy court's denial of Debtors' motion to alter, amend or vacate the bankruptcy court's order denying confirmation of Debtors' fourth reorganization plan. Barger v. Hayes County Non-Stock Co-op (In re Barger), 219 B.R. 238 (B.A.P. 8th Cir. 1998) While the first appeal was pending, Debtors filed two additional proposed reorganization plans, neither of which was confirmed. On April 16, 1998, after this court issued its decision on the first appeal, the bankruptcy court ordered the Debtors to file a plan which "fairly" dealt with the Co-op's claim. In response, Debtors filed a plan that they denominated "Debtors' Fourth Amended Chapter 12 Reorganization Plan" (it was actually their seventh plan). This plan made no provision for payment of the Co-op's claim; instead, in this plan, Debtors proposed to meet the Co-op's objection to an earlier plan and the court's prior rulings by eliminating the Co-op from treatment under the plan and by providing that the Co-op would not be bound by the terms or confirmation of the plan. Instead, the Co-op would be free to pursue nonbankruptcy claims in state court. The Debtors further reserved their right to modify the plan depending on the outcome of their adversary proceeding.

In its order dated July 13, 1998, which is the subject of this appeal, the bankruptcy court denied confirmation of Debtors' plan. The court found that Debtors had not filed the plan in good faith because Debtors failed to treat the Co-op as a secured creditor or to make it whole under the plan. The court viewed Debtors' proposed plan treatment as unfair because the Debtors would remain under the protection of the automatic stay; thus, any attempt by the Co-op to pursue state court remedies would be frustrated. The bankruptcy court also dismissed the case, as it had repeatedly warned the Debtors it would do if they failed to propose a confirmable plan.

---

action by the debtors is, at a minimum, conversion and unless the debtors are willing to provide detailed information about such conversion, they do not deserve to be and shall not be allowed to continue in Chapter 12." By order dated June 7, 1997, the bankruptcy court stated: "Rather than attempt to make amends, [Debtor] now proposes to pay at most a mere 1/7 of the claim of this once fully secured creditor, and he will do that only if he is not entirely successful in his lawsuit. This treatment of the creditor's claim is not in good faith."

This appeal raises two issues: first, whether the bankruptcy court erred in refusing to confirm the Debtors' plan and, second, whether dismissal was appropriate.

## DENIAL OF CONFIRMATION

Section 1225 of the Bankruptcy Code delineates the criteria for confirming a Chapter 12 plan of reorganization. 11 U.S.C. § 1225(a) (1994). More specifically, § 1225(a)(3) provides that the "court shall confirm a plan if – . . . (3) the plan has been proposed in good faith and not by any means forbidden by law . . . ." Id. An identical "good faith" requirement is applicable to confirmation of plans in Chapter 11 and Chapter 13 cases. See 11 U.S.C. § 1129(a)(3); id. § 1325(a)(3). Thus, cases considering the scope of the good faith requirement under these two chapters apply equally in a Chapter 12 case. Traders State Bank v. Mann Farms, Inc. (In re Mann Farms, Inc.), 917 F.2d 1210, 1214 (9th Cir. 1990).

Whether a plan is proposed in good faith turns on an examination of the totality of the circumstances surrounding the plan and the bankruptcy filing. Noreen v. Slattengren, 974 F.2d 75, 76 (8th Cir. 1992); Handeen v. LeMaire (In re LeMaire), 898 F.2d 1346, 1349 (8th Cir. 1990). The court must focus on factors such as whether the debtor has stated debts and expenses accurately; whether the debtor has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether the debtor has unfairly manipulated the Bankruptcy Code. Noreen, 974 F.2d at 76; LeMaire, 898 F.2d at 1349; see also Hanson v. First Bank, 828 F.2d 1310, 1315 (8th Cir. 1987) ("In the context of a chapter 11 reorganization . . . a plan is considered proposed in good faith 'if there is a reasonable likelihood that the plan will achieve a result consistent with the standards prescribed under the Code.'") (citation omitted); In re Trans World Airlines, Inc., 185 B.R. 302, 314 (Bankr. E.D. Mo. 1995) (court should consider whether the plan has been proposed with the legitimate and honest objective of preserving the Debtor's business while maximizing the return available to creditors). Pre-filing conduct is not determinative of the good faith issue, but it is nonetheless relevant. LeMaire, 898 F.2d at 1352. In essence, the good faith inquiry looks at the debtor's fairness in dealing with creditors.

Good faith is a factual inquiry. Id. at 1349. "[O]ur task here is to review the bankruptcy court's factual findings under the clearly erroneous standard . . . in order to determine whether [Debtor] proposed [the] plan in good faith." Id. at 1350. Only if we are left with the firm conviction that a mistake has been made, should we reverse. Forbes v. Forbes (In re Forbes), 215 B.R. 183, 187 (B.A.P. 8th Cir. 1997).

The bankruptcy court's decision that Debtors did not propose their plan in good faith will be affirmed. Debtors admittedly sold crops subject to a security interest without notifying a fully secured creditor or paying any of the proceeds to that creditor. Having unilaterally acted to convert the creditor's collateral, they then attempted to use the Bankruptcy Code to diminish their obligation to the Co-op. In the plan that is the subject of this appeal, Debtors ignored the Co-op altogether and attempted to force the Co-op to protect its rights outside of bankruptcy. Given the Debtors' bankruptcy history, the many warnings provided by the bankruptcy court, and the Debtors' abysmal record of delay, this is a clear manipulation and abuse of the Code.

Debtors contend that they acted with good intentions when they sold the Co-op's collateral – they meant no harm and were merely trying to operate their farm. They assert that the Co-op could have protected itself by making a protective filing in Colorado. Further, they argue, now that the Co-op has been rendered an unsecured creditor, they must treat it equally with all other unsecured creditors, who will receive little or nothing under the plan. They profess to be at a loss as to how to value the Co-op's claim and fault the bankruptcy court for failing to value it for them. Finally, they essentially argue that they have tried every way they know to properly treat the Co-op's claim, they have done their best, and they should be allowed to go on with their farming operations.

Given this record, these arguments are truly disingenuous. As the bankruptcy court pointed out, Debtors' difficulties in dealing with the Co-op in a fair and nondiscriminatory manner are of their own doing; their wounds are self-inflicted. It is hardly proper, and it is truly manipulative, to wrongfully and involuntarily convert a creditor's collateral, reduce the creditor from secured to unsecured status by such conversion, and then argue that the Bankruptcy Code makes it difficult to confirm a plan that properly deals with the wronged

5

creditor in relation to the other creditors.[3]  The bankruptcy court ruled properly in refusing to confirm the plan.

## DISMISSAL

Section 1208 of the Bankruptcy Code articulates the circumstances under which a bankruptcy court may dismiss a case.  The court "may dismiss a case under this chapter for cause, including – (1) unreasonable delay . . . by the debtor that is prejudicial to creditors; . . . (5) denial of confirmation of a plan under section 1225 of this title and denial of a request made for additional time for filing another plan or a modification of a plan; . . . and (9) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation."  11 U.S.C. § 1208(c).  These specifically articulated criteria are not exclusive.  For example, inequities existing in the debtor's pre-filing conduct, coupled with denial of confirmation of a plan, provide ample cause for dismissal.  See Euerle Farms, Inc. v. State Bank (In re Euerle Farms, Inc.), 861 F.2d 1089 (8th Cir. 1988).

The decision to dismiss a case is within the sound discretion of the bankruptcy court. See Brown v. I.R.S. (In re Brown), 82 F.3d 801, 806 (8th Cir. 1996) (finding that the bankruptcy court did not abuse its discretion in dismissing a Chapter 12 case).  The bankruptcy court did not abuse its discretion by dismissing Debtors' bankruptcy case.  By the time it did so, the Debtors had been under the protection of the bankruptcy court almost continuously for more than a decade; they had been in this particular bankruptcy proceeding for over thirty months; they had unsuccessfully attempted to resolve their differences with the Co-op through seven different plans; and, by their own admission, they had tried every way they knew to satisfy the Co-op, short of making it whole.  The bankruptcy court warned the Debtors repeatedly that they had to treat the Co-op fairly, and they had been given and missed a series of court imposed deadlines for completing their Chapter 12 proceedings. Chapter 12 is designed to provide a relatively expedited resolution of a family farmer's

---

[3]Debtors cited In re McKeag, 77 B.R. 716 (Bankr. D. Neb. 1987), as controlling. McKeag, and other cases of its kind cited by the Debtors in their brief, deal with conversion of nonexempt assets to exempt assets prior to bankruptcy, a legally and factually distinguishable scenario.

disputes with its creditors. See, e.g., 11 U.S.C. § 1221 (debtor must file a plan no later than 90 days after filing); id. § 1224 (the hearing on confirmation should be concluded no later than 45 days following filing). Debtors' tenure in this Chapter 12 case has been surprisingly lengthy. We find no abuse of discretion: indeed, the bankruptcy court gave the Debtors extensive license in their quest to resolve their financial troubles with their creditors.

This case, in fact, is similar to and guided by another Chapter 12 case decided by the Eighth Circuit Court of Appeals. In Euerle Farms, 861 F.2d 1089, the debtors had transferred property for no consideration prior to their Chapter 12 filing in an attempt to remove it from the estate. For this and other reasons, the bankruptcy court denied confirmation of their plan. While an appeal from this order was pending, the bankruptcy court dismissed the case, relying on the debtors' pre-filing conduct, their poor financial performance, and the prior denial of confirmation of their plan. The Circuit Court affirmed, stating that "[t]he filing of a bankruptcy petition without the intent or ability to properly reorganize is an abuse of the Bankruptcy Code and renders the petition subject to dismissal." Id. at 1092. The instant case is even more egregious, and dismissal was well within the discretion of the bankruptcy court.

ACCORDINGLY, the order of the Bankruptcy court dated July 13, 1998, is affirmed.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL
FOR THE EIGHTH CIRCUIT.

7