**In re Gregory A. KURTZ, Debtor.**

**Bankruptcy No. 99–30874.**

United States Bankruptcy Court,
D. North Dakota.

Aug. 10, 1999.

Ross H. Espeseth, Bismarck, ND, for Debtor.

John S. Foster, Grand Forks, ND.

Wayne Drewes, Fargo, ND, trustee.

### MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This case is before the Court to consider confirmation of the Debtor's, Gregory A. Kurtz ("Kurtz"), Chapter 13 Plan filed June 3, 1999. Cyndi Roise ("Roise"), the Debtor's principal unsecured creditor, objects to confirmation on the ground that the plan has not been filed in good faith as required by section 1325(a)(3) of the United States Bankruptcy Code. 11 U.S.C. § 1325(a)(3). As additional relief, Roise asks that in the event confirmation is denied that the case be dismissed.

The confirmation hearing was held on July 26, 1999.

### Factual Background
#### 1.

Kurtz and Roise had dated off and on from 1991 to 1996 during which time their relationship generated numerous and sometimes physical disputes. In April 1996, during one of these episodes, Kurtz grabbed Roise by the arms pushing her to the ground resulting in serious injuries to her shoulder and neck. This precipitated a civil action by Roise for assault. Suit was commenced in November 1996 and in December 1997 after a two-day bench trial, the North Dakota District Court for Ward County found that Kurtz had used excessive force and that the injuries suffered by Roise were the proximate result of Kurtz's assault upon her. Judgment was entered on February 12, 1998, in favor of Roise for $209,808.00 plus interest. No amount of the judgment was ever paid. The District Court's decision was affirmed on appeal by the North Dakota Supreme Court by decision entered December 23, 1998, and the judgment now totals $236,277.00. *Roise v. Kurtz*, 1998 ND 228, 587 N.W.2d 573 (1998).

Armed with the Judgment and in aid of its execution, counsel for Roise undertook to examine Kurtz discovering thereby that he had made various property transfers.

Kurtz owned a condominium in Minot, North Dakota which, on January 2, 1997, after the assault case had been tried but before an opinion had been entered, he transferred by warranty deed to himself and his parents as joint tenants. At the confirmation hearing Kurtz admitted he had received no compensation for this transfer.

Kurtz also owned lake property in Devils Lake, North Dakota purchased in 1991 for $70,000.00 and presently worth $110,000.00. It was discovered that on February 4, 1998, after judgment had been entered, this property was transferred by warranty deed also to his parents. He claims he sold the lake property to his parents for $25,000.00 cash plus their assumption of the outstanding mortgage. However, he concedes there is no written documentation evidencing this arrangement. The attorney acting as counsel for Roise in her assault case testified that during his examination of Kurtz and various documents provided, he was unable to discover anything proving that the lake property had been purchased by Kurtz's parents. This examination further suggested that a Sylvan power boat and an Arctic Cat snowmobile had been transferred to Kurtz's current girlfriend but as with the real property, no evidence of any payment was discovered. At the confirmation hearing Kurtz, testifying, admitted

these items had been transferred to his girlfriend but professed the arrangement was a sale. No evidence was produced establishing that it was, in fact, a sale.

Satisfied that the foregoing transactions were somehow irregular, Roise's civil counsel prepared a complaint for recovery of the assets under North Dakota's Uniform Fraudulent Transfer Act. Before this action could be sued out, however, Kurtz filed for relief under Chapter 13 on May 19, 1999.

### 2.

As filed, the Petition lists Kurtz as owning a condominium in Minot without disclosing the nature or extent of his interest. Personal property totaling $76,165.00 in value is listed inclusive of a $70,000.00 401(K) plan. No Sylvan boat or snowmobile is listed. Schedule "D" discloses there to be no secured creditors but Schedule "F" reveals total unsecured debt of $247,877.00 of which Roise's claim of $236,277.00 comprises 95% of the total. The balance of the unsecured debt stems, for the most part, from credit cards. Schedule "I" reveals Kurtz's gross income, derived from his business as a helicopter pilot and air national guard service at $4,275.00 per month. Total net income after deductions and a $433 per month 401(K) contribution is $2,513.00. Monthly expenses, none of which are remarkable or challenged, total $2,400.00.

### 3.

The plan, as filed, proposes a monthly payment to the trustee of $546.00 per month for 36 months which is achieved by eliminating the monthly 401(K) contribution. In addition, Kurtz agreed at confirmation to apply all disposable income towards plan payments. The plan also commits 50% of any net proceeds derived from a law suit he apparently commenced against his homeowner's insurance carrier seeking coverage for the assault judgment. The carrier had previously denied coverage and the suit is pending. Nothing more is known of this action or its merits. No policy terms were produced

and no testimony was offered bearing upon the merits or status of the case. The Court regards any recovery as a long shot at best as typically most homeowner's policies specifically exclude coverage for bodily injury arising out of the acts of the insured. Therefore, the proper contribution is jejune. A payment of $546 per month over 36 months affords the unsecured creditors $19,656.00 which, after deducting the trustee's commission, will result in a 7.2% recovery. For Roise this comes out to $17,000.00 on a claim of $236,277.00.

### Discussion

■ Under the Bankruptcy Code, a court shall confirm a plan if "the plan has been proposed in good faith and not by a means forbidden by law." 11 U.S.C. § 1325(a)(3). Good faith is not defined in the Code itself but has been given meaning by courts applying the concept. Most circuits, including the Eighth Circuit, now use a flexible totality of the facts and circumstances approach with a focus being upon whether there has been an unfair manipulation of the Bankruptcy Code. *Noreen v. Slattengren,* 974 F.2d 75 (8th Cir.1992); *In re LeMaire,* 898 F.2d 1346 (8th Cir.1990) *Education Assistance Corp. v. Zellner,* 827 F.2d 1222 (8th Cir.1987). The seminal case in our own district is *In re Zaleski,* 216 B.R. 425 (Bankr.D.N.D. 1997).

■ Integral to the notion of Code manipulation is recognition of the distinction between Chapter 7 and Chapter 13. A Chapter 13 discharge is much more complete than one in Chapter 7 as section 1328 allows a discharge of many debts not otherwise dischargeable in a Chapter 7. Debts occasioned by reason of fraud or false pretenses (section 523(a)(2)) and debts arising out of willful or malicious injury to another (section 523(a)(6)) are among those distinguished by being dischargeable in a Chapter 13 but not in a Chapter 7. Thus, the motivation of a debtor in seeking Chapter 13 relief as opposed to relief under Chapter 7 becomes an important component of the court's inquiry

into manipulation. Where a major portion of the claims to be discharged arise out of wrongful pre-petition conduct and the plan proposes minimal repayment great scrutiny of motivation is required.[1] In the case at bar, judgment was entered against Kurtz for damages arising from injuries intentionally inflicted upon Roise. While Kurtz believes the injuries suffered by Roise are, on their facts, distinguishable from the more egregious injuries found in other cases to be grounds for bad faith, this distinction, being one of degree, is not persuasive. Were this a Chapter 7 case the judgment, on the basis of the facts so far known, would quite possibly be nondischargeable under section 523(a)(6) as constituting a "willful and malicious" injury. For a debt to be nondischargeable under this section, the judgment creditor must prove by a mere preponderance of the evidence that the debtor acted with intent to injure her in a way that resulted in harm. *In re Scarborough*, 171 F.3d 638 (8th Cir.1999); *In re Feist*, 225 B.R. 450 (Bankr.D.N.D.1998). There is little doubt that were it not for the existence of the civil judgment, Kurtz would not have filed bankruptcy under any chapter. Moreover, given the possible nondischargeable nature of the judgment, Chapter 7 was not the preferred option. This alone is not enough to reach a finding that there has been unfair manipulation of the Bankruptcy Code amounting to bad faith. Further consideration must be given to the sincerity of the Debtor in putting forth his Chapter 13 plan of repayment and whether that plan demonstrates real sincerity on the part of Kurtz to repay his creditors as best he can in exchange for the liberal Chapter 13 discharge.

■ As before noted, the plan results in a 7.2% return which on its face might be regarded as de minimis. At first blush, when one considers his income and expenses, all of which are reasonable, the conclusion might be made that he is indeed doing the best he can and therefore, is sincere in the effort. But in this case the analysis does not stop with the income and expense schedules.

■ Here there is evidence suggesting that Kurtz, anticipating an adverse civil judgment, took steps before the judgment was even entered to transfer assets out of the hands of his creditors. Although explanations were offered at the confirmation hearing, they were not convincing nor were they buttressed by any independent evidence or documents. The Court is left with the impression that the transfers of both the condominium and the lake property were motivated solely by the specre of the civil judgment. Although it is not certain whether either of these are recoverable as fraudulent transfers, counsel for Roise thought so and in a Chapter 7 case the trustee likely would investigate further under section 544(b) or section 548 with the result being the possibility of a much greater return for the unsecured creditors. In her brief, Roise lists a number of factors which she believes point to the fraudulent transfer of the lake property. The possibility of such a recovery doubtless weighed in as another motivation for Kurtz to seek Chapter 13 relief rather than Chapter 7 since a Chapter 13 trustee, as opposed to a Chapter 7 trustee, is highly unlikely to undertake any recovery efforts. Indeed, in this case the Chapter 13 trustee recommended confirmation.

The fact that Kurtz, by his own actions, no longer possesses any significant assets coupled with the meager plan payments militates against his assertion of repay-

---

1. In assessing motivation *In re LeMaire*, 898 F.2d 1346 at 1351 says that the court must consider public policy factors which are implicated in the discharge of a debt resulting from a willful and malicious injury. Offering further explanation the court said, "Whenever a Chapter 13 petition appears to be tainted with a questionable purpose, it is incumbent upon the Bankruptcy Court to examine and question the debtor's motives." 898 F.2d at 1352 n. 8. In a later case the appellate court said that the purpose of the Bankruptcy Code is to give the honest debtor a fresh start, "Not to shield those who abuse the bankruptcy process in order to avoid paying their debts." *In re Molitor*, 76 F.3d 218, 220 (8th Cir.1996).

ment sincerity and he fails to overcome the conclusion to be otherwise drawn from the nature and magnitude of the debt being discharged. As pointed out by Roise, had the lake property not been transferred, the liquidation value of the bankruptcy estate would be considerably higher than it is.

From a totality of the circumstances, with particular emphasis placed on the nature of the pre-petition debt, the pre-petition transfers and the amount of projected plan payments, the Court finds that the Chapter 13 plan presently before the Court was not proposed in good faith.

Accordingly, confirmation of the Chapter 13 Plan filed June 3, 1999 is DENIED. All other relief is DENIED.[2]

**SO ORDERED.**

---

**2.** The case will not be dismissed at this juncture as Roise's bad faith objection was directed to the plan, not to the case itself and all of the requirements under section 1307(c)(5) have not yet been met.