In the Matter of John Louis
SELLERS, Debtor.

No. 01–20561.

United States Bankruptcy Court,
S.D. Georgia,
Brunswick Division.

Dec. 11, 2001.

Marvin L. Pipkin, Darien, GA, for Plaintiff/Movant.

William S. Orange, Brunswick, GA, for Defendant/Respondent.

### MEMORANDUM AND ORDER ON SOUTHEASTERN BANK'S OBJECTION TO CONFIRMATION

LAMAR W. DAVIS, Jr., Bankruptcy Judge.

Debtor John Louis Sellers ("Debtor") filed this Chapter 13 case April 11, 2001.

The Southeastern Bank ("Bank") objects to confirmation of Debtor's plan. This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 157(b)(2)(L).

## BACKGROUND

Debtor and his wife ("the Sellers") filed an earlier Chapter 13 petition on February 12, 1999. At the time of that filing, Debtor was engaged in the business of land clearing and development. Prior to filing, he had sold an excavator and another item of equipment used for business purposes ("the equipment") which secured a loan from Bank to Debtor. He had then disposed of the money realized from the sales, had remitted no part of the sale monies to Bank, and had not informed Bank that he had disposed of the equipment. At the time the Sellers filed their petition, they made misrepresentations that they had possession of the excavator, and their proposed Chapter 13 plan provided that Bank would retain the lien securing the excavator. At the creditors' meeting on April 6, 1999, Debtor admitted that the excavator had been sold and the other item of equipment "junked."

On June 23, 1999, the case was converted to Chapter 7. Bank filed an adversary proceeding for the purpose of having the debt excepted from discharge. The Sellers and Bank agreed by consent order that the debt to Bank was nondischargeable under 11 U.S.C. § 523(a)(6).[1] On January 26, 2000, the Court denied discharge of the debt and rendered in Bank's favor judgment of $37,929.05 plus $150.00 costs. Debtors discharged all other debts they owed, which amounted to more than $600,000.00.

The Sellers made no subsequent arrangements to satisfy the non-dischargeable debt. On February 16, 2001, approximately thirteen months after judgment was rendered, Bank initiated an action in garnishment to collect the debt. As a result, twenty-five per cent of Debtor's $1,750.00 net monthly pay from his job with the State of Georgia was garnished. On April 11, 2001, Debtor filed the current Chapter 13 case, in which he scheduled only two debts—the debt to Bank and a $350.00 debt to the Glynn County Fire Department for medical services.

Debtor, who began working for the State of Georgia after filing his prior case, is currently a full-time employee of the Department of Natural Resources. At present, both Debtor and his wife have medical problems for which they have been prescribed medication costing approximately $650.00 per month and which require monthly visits to their cardiologists. Debtor's wife, who is not a party to the present case, is a department store clerk whose employment status had been reduced from full-time to part-time status as a result of her health problems and whose monthly income at the time Debtor filed the current case was $750.00. The Sellers, who during the pendency of the prior case supported a household of six, including four minor children, presently support a household of five, including three minor children.

Debtor seeks to pay a "best effort" prorata dividend to Bank, which amounts to $90.00 monthly for sixty months, and ultimately to discharge the remainder of the debt under the "super discharge" provisions of 11 U.S.C. § 1328. Bank objects to confirmation of Debtor's plan on three grounds. First, Bank contends that its claim should be treated as a secured claim.

---

1. Section 523(a)(6) provides that a discharge under § 727 does not discharge an individual debtor from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

Second, to the extent that the claim is unsecured, Bank contends that the treatment of the claim is less under Debtor's plan than would be paid under a Chapter 7 case. Third, Bank contends that Debtor's plan is not made in good faith. Having found the first two grounds meritless,[2] the Court addresses Bank's third ground.

### FINDINGS OF FACT and CONCLUSIONS OF LAW

Provided that a debtor satisfies the eligibility requirements for relief under Chapter 13, he may submit for confirmation a plan that modifies the rights of holders of secured or unsecured claims and that provides for the payment of all or any part of any allowed claim. 11 U.S.C. § 1322(b). Upon completion of plan payments, "the court shall grant the debtor a discharge of all debts provided for by the plan." 11 U.S.C. § 1328(a). The exceptions from discharge in Chapter 13 do not include a debt arising from willful and malicious injury to a creditor. *See* § 1322(b)(5). Thus, notwithstanding § 523(a)(6)'s provision that a discharge "does not discharge an individual debtor from any debt ... for willful and malicious injury by the debtor to another entity or to the property of another entity," the so-called "super discharge" provisions of Chapter 13 allow a debtor to discharge such debts if the plan is confirmed and the debtor successfully completes all payments.

■■■ Nevertheless, a court may deny confirmation of a Chapter 13 plan which was not proposed in good faith. § 1325(a)(3). In *Kitchens v. Georgia Railroad Bank and Trust Co. (In re Kitchens)*, 702 F.2d 885 (11th Cir.1983), the Eleventh Circuit provided guidance for determining a debtor's good faith within the context of a Chapter 13 plan by listing factors to be considered. The non-exclusive list includes the debtor's motivations and sincerity in seeking relief, the circumstances under which the debtor contracted with creditors, whether the debtor dealt with creditors in good faith, the debtor's income, the debtor's ability to earn and the likelihood of fluctuation in his earnings, the debtor's and his dependents' living expenses, the frequency with which he has sought bankruptcy relief, and special circumstances such as inordinate medical expense.[3] *Id.* at 888–89. Factors suggested by other jurisdictions include the percentage of proposed repayment, the nature and amount of unsecured claims, and the debtor's honesty in representing facts. *See, e.g., Deans v. O'Donnell (In re Deans)*, 692 F.2d 968, 972 (4th Cir.1982). No single factor is determinative; instead,

2. The first ground is contrary to the plain meaning of 11 U.S.C. § 506(a), which provides that a secured claim must be "secured by a lien on property in which the estate has an interest." As to the second, the fact that a creditor may be allowed to pursue a debtor on a non-dischargeable debt after a Chapter 7 discharge is not the same as being "paid" when an estate is liquidated. *See Ravenot v. Rimgale (In re Rimgale)*, 669 F.2d 426, 430 (7th Cir.1982). The *Rimgale* court stated:

 What is to be compared is the total of the payments to the creditor, discounted to present value, and the amount the creditor would receive in a straight liquidation. The amount that would be paid on such claim if the estate of the debtor were liquidated does not include additional amounts that a creditor may be able to collect after a liquidation, if he can keep the judgment alive. *Id.* (internal citation omitted); *see also In re Houston*, Case No. 96–40097, 1996 WL 33366595 (Bankr.S.D.Ga.1996) (Walker, J.) (identifying *Rimgale* statement as majority view). This Court holds to the majority view.

3. The list also includes the amount of attorney's fees, the duration of the debtor's plan, the debtor's degree of effort, and the burden which the plan's administration would place on the trustee. *In re Kitchens*, 702 F.2d at 888–89.

a debtor's good faith or lack thereof is properly determined by examining the totality of the circumstances. *See, e.g., Mason v. Young (In re Young)*, 237 F.3d 1168, 1174 (10th Cir.2001); *In re Chaffin*, 816 F.2d 1070, 1073 (5th Cir.1987). The totality of the circumstances test encompasses both the circumstances of the current filing and pre-petition circumstances. *E.g., Solomon v. Cosby (In re Solomon)*, 67 F.3d 1128, 1134 (4th Cir.1995); *Soc'y Nat'l Bank v. Barrett (In re Barrett)*, 964 F.2d 588, 592 (6th Cir.1992). *But see Keach v. Boyajian (In re Keach)*, 243 B.R. 851, 867–68 (1st Cir. BAP 2000) (cautioning that only circumstances relevant to debtor's honesty of purpose in filing should be considered).

### a. Good Faith Principles

Review of case law establishes that the following principles apply in analyzing good faith in the context of this case.

■ *1. Good faith may be called into question where a debtor seeks to discharge in Chapter 13 a debt nondischargeable in Chapter 7.* Because "[t]he purpose of making a debt nondischargeable in bankruptcy is to enable satisfaction of the debt out of the debtor's future income rather than allowing the debtor to wipe the slate clean," *In re Schaitz*, 913 F.2d 452, 454 (7th Cir.1990), a Chapter 13 plan which proposes to repay only a small portion of a debt nondischargeable under Chapter 7 deserves "particular scrutiny," *Fid. & Cas. Co. of N.Y. v. Warren (In re Warren)*, 89 B.R. 87, 95 (9th Cir. BAP 1988) (noting

urgency of establishing good faith when Chapter 13 super discharge is sought); *see also Hardin v. Caldwell (In re Caldwell)*, 895 F.2d 1123, 1126 (6th Cir.1990) (approving "particular scrutiny" standard); *In re Kurtz*, 238 B.R. 826, 830 (Bankr.D.N.D. 1999) ("Where a major portion of the claims to be discharged arise out of wrongful pre-petition conduct and the plan proposes minimal repayment[,] great scrutiny of motivation is required."); *In re Dotson*, 124 B.R. 836, 839 (Bankr.N.D.Okla.1991) (requiring scrutiny to guard against manipulation of bankruptcy statute).

■ *2. The good faith test requires more than a simple determination that a debtor is applying his "best effort" in designating all his disposable income to his proposed plan to discharge a debt dischargeable in Chapter 7.* A Chapter 13 debtor "should not be permitted to nullify major provisions of 11 U.S.C. § 523 merely by paying an insignificant portion of the nondischargeable debt." *In re Warren*, 89 B.R. at 95 ("When factors of minimal repayments and a nondischargeable debt are present, . . . the debtor has the burden of producing more than simply evidence of best effort."); *see also Ravenot v. Rimgale (In re Rimgale)*, 669 F.2d 426, 432 (7th Cir.1982) ("The correct approach is to treat the issues of substantiality and best effort as elements of good faith.").[4]

■ *3. Good faith requires a showing that reasons other than, or in addition to, a nondischargeable debt pressed debtors to file for Chapter 13 protection. See Davis*

**4.** *Contra In re Keach*, 243 B.R. at 870 ("Congress set the minimum dividend by employing the disposable income and the best interests tests. Congress having spoken, no judge may raise the bar."). I disagree with the *Keach* rationale that satisfying the 1325(b) disposable income test nullifies any further consideration of substantiality of repayment as an element of good faith. The better view is that

good faith may still include substantiality of repayment as part of the totality of circumstances analysis. After a debtor meets the good faith test under this standard, Congress then required a minimum payment as measured by the debtor's disposable income. If debtor's payments fall below this floor, the plan cannot be confirmed even if debtor's good faith and honesty are unquestioned.

v. Mather (*In re Davis*), 239 B.R. 573, 578 (10th Cir. BAP 1999) (affirming finding of lack of good faith where Chapter 13 debtor, who had filed prior Chapter 7 case with wife in which one debt was nondischargeable due to debtor's having sold inventory out of trust and having failed to account for proceeds, proposed to pay priority tax claims in full while paying merely 0.4% of nondischargeable claim); *Noreen v. Slattengren*, 974 F.2d 75, 77 (8th Cir.1992) (affirming finding of bad faith where debtor filed Chapter 13 in anticipation of damage award in civil suit); *In re Harlan*, 179 B.R. 133, 141 (Bankr.W.D.Ark.1995) (confirming plan over objection of creditor because debtor filed case primarily because of IRS levies rather than to avoid creditor's efforts to collect judgment based on nondischargeable claim arising from debtor's embezzlement); *In re Carsrud*, 161 B.R. 246, 253–54 (Bankr.D.S.D.1993) (sustaining objection to confirmation because (1) debtors' "slick scheme to shun the state court's verdict and euchre [creditor] from obtaining a meaningful recovery," included evading making voluntary repayments, engaging in preferential activity in order to qualify under Chapter 13, and (2) payments received by creditor resulted from creditor's effort to garnish Debtor's wages and levy against inheritance).

■ *4. A Chapter 13 debtor must evidence, in the totality of circumstances, an overall sincere effort to satisfy a claim non-dischargeable in Chapter 7.* Where a debtor appears to have made a good faith effort to satisfy creditors' claims consistent with the debtor's available resources, even the most egregious pre-filing conduct does not mandate denial of confirmation. *E.g., Neufeld v. Freeman*, 794 F.2d 149, 153 (4th Cir.1986); *see also Metro Employees Credit Union v. Okoreeh–Baah (In re Okoreeh–Baah)*, 836 F.2d 1030, 1030–34 (6th Cir.1988) (determining necessity for find-ings in addition to fact that debtors used collateral securing creditor's loan to secure a second loan as basis for lack of good faith); *In re Gillespie*, 266 B.R. 721, 727 (Bankr.N.D.Iowa 2001) (finding good faith, despite small dividend to be applied to debt arising from assault conviction, where debtor paid "significant amount of disposable income beyond his plan payments" and committed future income to making payments). Such post-filing good faith effort may fail to provide good faith sufficient for confirmation, however, where a debtor's pre-filing conduct indicates a lack of *overall* sincerity in paying creditors. *See In re Kurtz*, 238 B.R. at 830 (denying confirmation, despite debtor's apparent post-filing sincerity in allotting disposable income to pay creditor, in part because of debtor's pre-filing transfer of assets which were motivated solely by threat of civil judgment).

■ Considering a debtor's pre-petition conduct in order to determine whether a debtor's plan is a good faith effort to satisfy a claim which arose out of prepetition fraud

> is not at cross-purposes with the admittedly liberal provisions of Chapter 13, under which debts resulting from illegal acts such as embezzlement, fraud, and willful and malicious injury, ordinarily may be discharged. Rather, it ensures against manipulation of the statute by debtors who default on obligations ground in dishonesty and who subsequently seek refuge in Chapter 13 in order to avoid, at minimal cost, a nondischargeable debt.

*Neufeld*, 794 F.2d at 153. Thus, a finding of good faith requires that a debtor's conduct, both pre-and post-filing, must evidence a desire to pay debts to the best of the debtor's ability.

■ *5. The result of confirming a Chapter 13 plan must be consistent with*

*Code standards.* "A good faith test ... should examine the intentions of the debtor and the legal effect of the confirmation of a Chapter 13 plan in light of the spirit and purposes of Chapter 13." *Chinichian v. Campolongo (In re Chinichian),* 784 F.2d 1440, 1444 (9th Cir.1986); *see also In re Rimgale,* 669 F.2d at 432 ("The courts retain discretion to prevent [abuse of Chapter 13].... [and] should be mindful ... that the unsecured creditors must rely on the court to give meaning to the congressional intent that they receive substantial payments."). Congress provided rehabilitation to debtors under Chapter 13 in discharging debts otherwise nondischargeable in Chapter 7. "The Chapter 13 debtor ... serves a five year sentence to accomplish the dischargeability which Chapter 7 does not provide." *In re Thorson,* 6 B.R. 678, 683 (Bankr.D.S.D.1980). To prevent abuses of the liberal discharge provisions in Chapter 13, a bankruptcy court must examine good faith on a case by case basis and exercise discretion. *See In re Rimgale,* 669 F.2d at 427–28 (discussing authority of bankruptcy judges under Chapter 13). Achieving results consistent with Code standards requires, in essence, that debtors must deal fairly with their creditors. *Barger v. Hayes County Non–Stock Co-op (In re Barger),* 233 B.R. 80, 84 (8th Cir. BAP 1999).

**b. Application of Good Faith Principles**

 Applying the principles discussed above to the facts in this case, I find for the following reasons that Debtor's case was not filed in good faith, that the plan cannot be confirmed, and that the case should be dismissed.

*1. The primary, if not the sole, effect of confirming Debtor's Chapter 13 plan would be to award Debtor a super discharge of the obligation to Bank.* Debtor's obligation to Bank has already been held in the previous Chapter 7 case to be nondischargeable. Under *Kitchens* and numerous other cases cited above, the existence of a claim which is nondischargeable in Chapter 7 is a factor which is properly considered in the totality of the circumstances, and, where that debt is the primary motivation behind a debtor's Chapter 13 filing, the circumstances merit particular scrutiny.

A review of Debtor's budget reveals that Debtor is making his "best effort" to repay the obligation to Bank, in that the budget shows only $90 per month in disposable income and that there are no budget items which are glaringly unreasonable or disproportionate expenditures in light of Debtor's overall income and personal circumstances. The medical and dental expenses are extremely high, particularly for an individual who works for the State of Georgia and has medical insurance as revealed on the payroll deduction line of his income schedule; nevertheless, with a family of five, two of whom are adults with serious medical problems, it is not implausible that the uninsured portion of medical and dental expenses could be that high. The other budget entries neither appear on their face to be unreasonable nor have been challenged by Bank.

Satisfying the "best effort" test, however, is not dispositive where there exists a debt nondischargeable in Chapter 7. This is particularly true in this situation, in which Debtor had filed a previous bankruptcy case in which he discharged debts in excess of $600,000 and left for treatment in the present Chapter 13 case only the nondischargeable judgment of some $37,000 and an additional $350 claim for medical services. Clearly, considering Debtor's and his wife's income, Debtor would have been in a position to deal with the $350 medical claim. Accordingly, the

sole effect of confirming Debtor's plan would be, in essence, to discharge his obligation to Bank.

*2. Debtor has not dealt fairly with Bank.* In the final analysis, Debtor has never dealt fairly with Bank. First Debtor obliterated Bank's property interest in the equipment which secured its loan to Debtor. Because Debtor converted Bank's collateral, Bank cannot now repossess, sell, and recoup some of its losses. In addition, Debtor concealed in his prior case the fact that he had converted the collateral. Then, after the conversion was discovered and Debtor consented to a judgment, there is no evidence that he made any attempt to satisfy that judgment. Finally, when Bank acted to collect the judgment, Debtor sought refuge again in this Court and sought to confirm a plan which proposes to pay a minuscule portion of the debt. The totality of Debtor's actions and omissions demonstrate his lack of good faith in his dealing with Bank and a lack of his overall sincere effort to satisfy the nondischargeable claim.

With respect to his motivation for filing Chapter 13, Debtor argues that his motivation was "simply seek[ing] to survive" and that filing this Chapter 13 case to stop Bank's garnishment was his only alternative. Debtor further asserts that he "had every expectation that he would be repaying Bank's and all other debts" when he converted Bank's property. Debtor's excuse is abysmally weak. Compare Debtor's explanation with that of the debtors in *In re Barger,* who converted a creditor's interest in loan collateral during the pendency of their bankruptcy case, asserted that they "meant no harm," and stated they "were merely trying to operate their farm" when they sold the collateral. *In re Barger,* 233 B.R. at 84. The *Barger* debtors further argued that "now that the [creditor] has been rendered an unsecured

creditor, they must treat it equally with all other unsecured creditors, who will receive little or nothing under the plan," essentially arguing "that they have tried every way they know to properly treat the [creditor's] claim, they have done their best, and they should be allowed to go on with their farming operations." *Id.* Finding that argument "disingenuous," the *Barger* court observed:

> Debtors' difficulties in dealing with [the creditor] in a fair … manner are of their own doing; their wounds are self-inflicted. It is … truly manipulative to wrongfully and involuntarily convert a creditor's collateral, reduce the creditor from secured to unsecured status by such conversion, and then argue that the Bankruptcy Code makes it difficult to confirm a plan that properly deals with the wronged creditor in relation to the other creditors.

*Id.* Debtor's excuse is similarly disingenuous, in light of the effect of his conversion on Bank and in light of the fact that his wounds were likewise self-inflicted.

Therefore, because the magnitude of the nondischargeable claim is, in essence, the only debt which triggered the filing of this case, because the case was filed immediately on the heel of Bank's garnishment of Debtor's wages, and because Debtor made no voluntary effort to repay the debt during the fourteen months following the entry of judgment, I conclude that Debtor's sole purpose for filing this case was as a direct response to Bank's efforts to collect its judgment.

*3. Debtor's changed circumstances do not warrant a finding of good faith.* Absent overwhelming circumstances that justify the debtor's actions and indicate proper motivation for filing the Chapter 13 case, this Court will not allow a debtor who has converted a creditor's property, concealed the conversion in a prior case, and

reduced the creditor's secured property interest to unsecured status to seek to discharge the debt for pennies on the dollar in a later Chapter 13 case, the sole effect of which would be to discharge that claim. To do so would not be consistent with the spirit and purpose of Chapter 13.

Here, neither Debtor's motivation in filing nor his present financial circumstances are sufficient to offset the evidence of bad faith. Debtor contends that his circumstances have changed sufficiently to warrant confirmation despite the effect of confirmation to discharge a single non-dischargeable debt. Debtor points to changed circumstances in two areas: (1) his and his wife's health, which now require monthly doctor visits and prescription drug expenditures of $650 and (2) his wife's change in job status from full time to part time.

Under the totality of circumstances test, the changed circumstances in the instant case are insufficient to warrant a finding of good faith. In the first place, although Debtor and his wife are both under the care of doctors, their conditions have not prevented them from working. Debtor is able to work full time and his wife is able to work part time. Moreover, Debtor's family appears to have medical insurance available which was not available when he filed the prior case as a self-employed contractor. Further, since the prior filing, one of Debtor's four minor children has attained majority and no longer resides at home. Before the end of the five-year plan period, two more children will have attained their majority.[5] Finally, the most persuasive fact is that neither health nor reduced income caused Debtor to file the present case. The garnishment action to collect the judgment triggered the filing, and the existence of that judgment represented no change in circumstances between the closing of the prior case and the filing of the present case.

## CONCLUSION

This Court, pursuant to its responsibility to "preserve the integrity of the bankruptcy process by refusing to condone its abuse," *Shell Oil Co. v. Waldron (In re Waldron)*, 785 F.2d 936, 941 (11th Cir.1986), concludes that Debtor's intentions and the legal effect of confirmation of his Chapter 13 plan fall short of the spirit and purposes of Chapter 13. In balance, Debtor appears to have avoided paying his nondischargeable debt to Bank and to have filed the present case in order to discharge that debt at minimal cost. Good faith is absent "where all the facts lead inexorably to the conclusion that the petition has been filed to avoid, at minimal cost, a nondischargeable debt." *In re Meltzer*, 11 B.R. 624, 627 (Bankr.E.D.N.Y.1981), *quoted with approval in Lawrence Tractor Co. v. Gregory (In re Gregory)*, 705 F.2d 1118, 1121 n. 4 (9th Cir.1983).

## ORDER

Pursuant to the foregoing Findings of Fact and Conclusions of Law, IT IS THE ORDER OF THIS COURT that the objection to confirmation is sustained. Debtor's case is dismissed.

---

5. In the prior case, Debtor's household income was $3,227 and the total expenses were $1,797. At the time of filing the present case, his net household income was $2,500 and his total expenses were $2,410. The difference in disposable income is approximately $780, less any savings to be realized as his children become independent.