### In the Matter of Raymond L. CHADWICK, Debtor.

### No. 02–20540.

United States Bankruptcy Court,
S.D. Georgia,
Brunswick Division.

Jan. 24, 2003.

Grady W. Henry, Jesup, GA, for Debtor.

Richard Taylor, Brunswick, GA, for Defendant/Respondent.

### ORDER ON OBJECTION TO CONFIRMATION

LAMAR W. DAVIS, Jr., Bankruptcy Judge.

Raymond L. Chadwick ("Debtor") filed a Chapter 13 petition for relief on April 29, 2002. On September 30, 2002, his former

wife, Marguerite Chadwick ("Wife"), filed an Objection to Confirmation.

## BACKGROUND

Debtor and Wife were divorced by a Final Judgment and Decree ("the Divorce Decree") filed for record on March 13, 1997, in the Superior Court of Muscogee County, Georgia ("Superior Court"). Ex.—5. The Divorce Decree incorporated by reference an agreement between the parties regarding support payments and the division of property ("the Property Agreement").[1] *See id.* The provision directly pertinent to the instant proceeding is that each party was to retain interest in a business known as "Chad's, Inc." ("Chad's"). Wife was entitled to forty percent of the value of Chad's, and her entitlement was designated "as part of the equitable property division." *Id.* (Agreement para. 6).

The Property Agreement set out two possible times and means for valuing and distributing Wife's portion. First, in the event Debtor were to die without having sold Chad's, Wife was to receive forty percent of the *value of Chad's* as determined on the date of Debtor's death. Second, in the event that Debtor were to sell Chad's, Wife was to receive forty percent of the *net proceeds realized in the sale* ("Net Proceeds"), along with documentation as to the sales price and an accurate accounting or closing document to reveal how Debtor

had determined the amount of the divisible Net Proceeds. The Property Agreement also provided specific instructions for determining the Net Proceeds in a sale:

> The net proceeds shall be calculated by taking the purchase price received for the business and deducting all debts of Chad's, Inc., required to be paid from the proceeds of the business (but not those debts of Raymond Chadwick individually), along with any taxes due for any income realized from this sale.

*Id.*

Debtor was subsequently found in willful contempt of the Divorce Decree's division-of-property terms due to his actions following the sale of Chad's to an entity known as "Road One" in September 1998. *See* Ex.—1 (Final Order, filed Oct. 17, 2001, Johnston, J.) [hereinafter "Contempt Order"]. Those actions included his having calculated Wife's forty-percent share based on a Net Proceeds amount of $74,979.65. To arrive at that figure, Debtor wrongfully deducted the amount of an IRS tax lien owed by Debtor and the amount due under a "non-compete and consulting agreement." Contempt Order para. 3 (listing those amounts as $67,536.33 and $150,000.00, respectively).

The Superior Court found that Debtor's actions were clear attempts to mislead Wife and to avoid paying Wife her rightful share of the Net Proceeds. *Id.* paras. 3–4.[2] The Court concluded that the amount

---

1. The Divorce Decree provided for payment of monthly alimony in the amount of $1,250.00 until Wife died or remarried and for the following divisions of property in addition to the division of Chad's: (1) a division of the parties' two automobiles; (2) the conveyance by Debtor to Wife of his interest in their marital residence, with Debtor assuming responsibility for payment of the two outstanding security deeds with combined balances of approximately $245,000.00; and (3) Debtor's entitlement to the remaining marital assets, including the business premises on which Chad's was then operating.

2. The Contempt Order stated:
   The court finds that the attempt to settle [Wife's] claim for 40% of the net proceeds of the sale of [Debtor's] business by the payment based upon the gain realized from the sale and not the net proceeds, as required by the Decree, and [Debtor's] further effort to ignore the payments to be received under the non-compete and consulting agreement were clearly attempts on the

of the Net Proceeds for which Debtor was accountable was $295,431.35 and that Wife was entitled to forty percent of that amount, less $31,000.00 previously paid. These adjustments and calculations resulted in a net obligation of Debtor to wife of $86,006.40. Because of its willful contempt finding, the Court ordered that the full amount was immediately payable to Wife, even though Debtor had not received a complete payout of the sales proceeds, some of which was in the form of a consulting fee and some of which was in the form of a long term lease of the business premises.

Debtor, after unsuccessfully appealing the Contempt Order, made no payments to Wife. Wife, through counsel, sought to obtain a hearing date on a second contempt action which she brought for the purpose of enforcing the payment provisions of the Contempt Order. Debtor testified that he traveled to Columbus, Georgia, to talk to the attorney who had handled Debtor's appeal and that he was advised that his only "salvation" was to file bankruptcy.

During that time period, Debtor was also experiencing difficulties with the Internal Revenue Service ("IRS") due to existing tax liens and the fact that the IRS had begun to levy on Debtor's retirement income. Debtor consulted bankruptcy attorney Grady W. Henry, who filed a Chapter 13 case on Debtor's behalf. With the assistance of Mr. Henry, and with the automatic stay in effect, Debtor and the IRS resolved their differences.

In filing his bankruptcy case, Debtor listed Wife as holder of an unsecured non-

priority claim in the amount of $90,564.00, *see* Schedule F, characterized her claim as a judgment lien, and moved to avoid that lien pursuant to 11 U.S.C. § 522(f), *see* Debtor's Plan & Motion. He proposed a plan which provides for payments of $2,718.00 per month for 60 months and projects a pro rata dividend to unsecured creditors. *See id.* Wife received notice of the filing and traveled from Columbus, Georgia, to the Southern District of Georgia to attend the § 341 creditors' meeting; however, she did not retain counsel and did not file a claim prior to the claims bar date as required by law for creditors who wish to participate in distributions through a Chapter 13 plan.

Wife contends that Debtor filed his bankruptcy case for the sole purpose of stopping a second Rule Nisi contempt hearing before the Superior Court. Debtor, while acknowledging that he was advised by the attorney who had handled his appeal of the Contempt Order that his only recourse was to file bankruptcy, nevertheless asserts that his difficulties with the IRS prompted his filing.

In this proceeding, Wife seeks dismissal of Debtor's case under 11 U.S.C. § 1325(a)(3) grounds, including lack of good faith in filing and fraud, and she seeks denial of confirmation for Debtor's failure to devote all his disposable income to the plan and for other failures to comply with provisions of the Bankruptcy Code. This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. § 157(b) and the standing Order of reference by the

part of [Debtor] to avoid his obligation and mislead [Wife].

    The court further finds that the attempt on the part of [Debtor] to deduct the payment of a $67,536.33 tax lien, which [Debtor] admitted was a debt at the time of the divorce which [Debtor] was required to pay in the divorce action, was a clear attempt to

avoid payment to the [Wife] of her rightful share of the "net proceeds" from the sale of the business.

    . . . .

    The court further finds that attorney's fees and expenses of litigation are justified

    . . . .

Final Order paras. 3–4, 10.

District Court of the Southern District of Georgia.

## DISCUSSION

This Court addresses two ultimate issues in this proceeding: (1) whether Debtor's pre-petition actions and his motives for filing constituted a lack of good faith; and (2) whether Wife's entitlement to her share of Debtor's business should be subject to this Court's jurisdiction.

### A. Good Faith

■ The Bankruptcy Code provides that a court shall confirm a plan if "the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). A bankruptcy court may deny confirmation of a Chapter 13 plan which was not proposed in good faith and may dismiss a Chapter 13 case which was not filed in good faith. Because "good faith" is not defined in the Bankruptcy Code, the Eleventh Circuit and other jurisdictions recognize certain circumstances as factors indicating a lack of good faith.

■ The non-exclusive list of good-faith factors provided by the Eleventh Circuit includes the debtor's motivations and sincerity in seeking relief, whether or not the debtor dealt with creditors in good faith, the debtor's degree of effort, and special circumstances of the case. *In re Sellers*, 285 B.R. 769, 771 (Bankr.S.D.Ga. 2001) (Davis, J.) (citing *Kitchens v. Ga. R.R. Bank & Trust Co. (In re Kitchens)*, 702 F.2d 885, 888–89 (11th Cir.1983)). Factors suggested by other jurisdictions include the nature of the unsecured claims, *id.* at 771 (citing *Deans v. O'Donnell (In re Deans)*, 692 F.2d 968, 972 (4th Cir.1982)), the debtor's honesty in representing facts, *id.*, and the debtor's honesty of purpose in filing, *Keach v. Boyajian (In re Keach)*, 243 B.R. 851, 867–68 (1st Cir. BAP 2000) (cautioning that debtor's honest purpose in

filing is *sole* relevant consideration). No single factor is determinative; instead, where a debtor's good faith is questioned, a court may consider all relevant factors within the circumstances of the particular case. *See In re Sellers*, 285 B.R. at 771 (citing *Mason v. Young (In re Young)*, 237 F.3d 1168, 1174 (10th Cir.2001), *and Solomon v. Cosby (In re Solomon)*, 67 F.3d 1128, 1134 (4th Cir.1995), *and Soc'y Nat'l Bank v. Barrett (In re Barrett)*, 964 F.2d 588, 592 (6th Cir.1992)); *In re Chaffin*, 816 F.2d 1070, 1073 (5th Cir.1987).

■ To prevent abuses of the liberal discharge provisions in Chapter 13, a bankruptcy court must, in the exercise of its discretion, examine good faith on a case-by-case basis. *In re Sellers*, 285 B.R. at 773 (citing *Ravenot v. Rimgale (In re Rimgale)*, 669 F.2d 426, 427–28 (7th Cir. 1982)). Achieving results consistent with Code standards requires, in essence, that debtors must deal fairly with their creditors. *Id.* (citing *Barger v. Hayes County Non-Stock Co-Op (In re Barger)*, 233 B.R. 80, 84 (8th Cir. BAP 1999)).

■ Applying these principles to this case, I make the following Findings of Fact regarding Debtor's good faith.

*1. Contrary to Debtor's assertions, his burdensome difficulties with the IRS were not his sole motivation in seeking bankruptcy protection.*

Debtor testified that the financial hardship created as a result of the IRS levy was the sole reason he sought bankruptcy protection, and he consulted Attorney Henry identifying that levy as his sole concern. Debtor admitted, however, that he was advised by the attorney who had handled his unsuccessful appeal of the Contempt Order that his only recourse was to file for bankruptcy protection. In light of Debtor's admitted knowledge that

bankruptcy was his only remaining hope to resist the effect of a second contempt order, I do not find credible Debtor's statement that his sole motivation in filing was to work out his IRS difficulties.

*2. Debtor's primary concern in filing for bankruptcy protection was to escape a second contempt finding and to avoid the consequences thereof.*

At the time Debtor filed for Chapter 13 protection, he had knowledge that Wife had filed a second contempt action. An objective examination of the totality of the circumstances surrounding Debtor's filing reveals that Debtor's primary concern in filing was the possible harsh consequences of a second contempt judgment. Although the existence of an IRS levy against his retirement income was clearly an additional factor triggering his filing, the magnitude of that financial setback—approximately $550.00 per month—was not as serious a problem as was the potential execution of an $86,000.00 judgment and the possibility of incarceration after further hearings in a state court forum.

*3. Debtor's bankruptcy filing contained a significant inaccuracy.*

Debtor's Schedule *I* shows a combined monthly household income of $7,886.00. Debtor listed his only monthly income as $839.00 (Social Security), $547.00 (retirement), and $2,500.00 (consulting fee), for a total of $3,886.00. He listed his current spouse's monthly income at $4,000.00 (income from real property).

On Schedule *J,* Debtor listed current expenditures of $5,206.00 per month. Those monthly expenditures included a payment of $2,100.00 per month which Debtor showed as payable to the Internal Revenue Service and the Georgia Department of Revenue for taxes which in fact he is not paying direct, but is paying through the Chapter 13 plan. As a result, Debtor's disposable income, which was listed as $2,718.00, must be adjusted to at least $4,818.00 as a result of the adjustment in payment of tax obligations. The budget shows that Debtor is making $2,100.00 per month in direct payments to the Internal Revenue Service and the Department of Revenue when, in fact, his plan does not provide for direct payments, but provides that those liabilities would be funded through the plan. This is a materially misleading inaccuracy.

*4. There were material inconsistencies and discrepancies in Debtor's testimony before this Court.*

The first problem was Debtor's testimony regarding a consulting fee arrangement with the buyer of Chad's. Debtor testified that the consulting fee agreement arose *after* the sale, when the purchaser, having learned that a lucrative exclusive contract between Chad's, Inc., and the consolidated government of Columbus and Muscogee Counties was up for renewal, approached Debtor and hired him as a consultant in order to gain the benefit of the personal relationships he could bring to the negotiating table in attempting to preserve the benefit of that contract. This testimony conflicts with the testimony of the Certified Public Accountant that federal form 8594 revealing the consideration paid in connection with the sale included the five year consulting contract. More importantly, the Superior Court specifically found that "the right to receive the $150,000.00 in the consultation agreement should be included in the net proceeds" of which Wife was entitled to receive forty percent. Contempt Order, para. 7. I find, therefore, that Debtor's testimony regarding the consulting fee was not credible.

Second, despite ample evidence of the consequences of dealing less than forthrightly with his ex-wife and with a trial court, Debtor appeared to find it difficult if not impossible to be forthcoming and

truthful when under oath and on the stand in this proceeding. Instead, he displayed a troubling tendency while testifying: he was precise, certain and direct as to matters which were favorable to his position, but under cross examination regarding less favorable matters, he was evasive. In particular, when questioned about whether the pendency of the second contempt proceeding in Superior Court triggered his filing of this Chapter 13 case, Debtor professed a lack of knowledge as to whether there was a second contempt proceeding and if so, whether a hearing had been set and whether he had received any notice of it. He conceded, however, that he filed his Chapter 13 case after his domestic relations counsel advised him that all of his appeals of the previous contempt proceeding had been exhausted and suggested to him that his only additional remedy at that point was to file bankruptcy.

A third problem was Debtor's assertion that at the time he sold his business in September 1998, the real estate had already been transferred into the name of his current spouse. That testimony is directly disproven by public records which show that the deed was not executed and recorded until the following year. *See* Ex.—3 (Quit Claim Deed, filed Apr. 14, 1999).

*5. Debtor's actions prior to filing and at the time of filing evidence his lack of good faith toward Wife.*

Debtor misled Wife and attempted to avoid remitting a substantial portion of her entitlement to the Net Income from the sale of Chad's. *See* Contempt Order. In addition, he filed for bankruptcy protection almost immediately after learning that all of the appeals of the judgment of contempt had been exhausted and because his domestic relations counsel could suggest no other avenue to him in order to evade an immediate execution on that judgment.

Debtor asserted that he filed his bankruptcy case after exhausting all other known avenues to prevent the IRS from keeping a portion of his monthly retirement pay. Mixed with that relatively benign concern, however, was the malignant awareness that a second contempt action in Superior Court could propel him into jail.

Furthermore, notwithstanding his agreement to the divorce settlement terms, Debtor did not believe that the property settlement with his former wife was vested, that is to say "hers," at the time of the divorce decree, and his actions constituted one attempt after another to keep from paying her. After selling Chad's, he attempted to mislead her and to deprive her permanently of most of her entitlement to the Net Proceeds. Even after the Superior Court held him in contempt and ordered him to pay, as a penalty, his former wife's attorney's fees and expenses of litigation, he made no effort whatsoever to make payment. All available excuses having failed him, Debtor, on the eve of a second contempt hearing before a court which had previously held him in willful contempt of that court's divorce decree, was trapped. So he filed bankruptcy.

Because Debtor has not dealt in good faith with Wife and has not shown honesty of purpose in filing, I conclude under the totality of the circumstances that Debtor did not file this case in good faith and that his case should be dismissed.

## B. Wife's Property Interest

■ For the reasons that follow, I conclude that Wife's entitlement to her portion of the sale of Chad's is not subject to discharge in this or any subsequent federal bankruptcy.

*1. Wife's interest in the Net Proceeds was her sole and separate property prior to the commencement of Debtor's bankruptcy case.*

■ Wife's property interest in the Net Proceeds arose out of an equitable division of property by decree of the Superior Court issued prior to Debtor's filing. A true pre-petition division of property is unaffected by bankruptcy unless it is subject to challenge as a voidable preference or fraudulent conveyance. *E.g., Smith v. Smith (In re Smith)*, 218 B.R. 254, 257–58 (Bankr.S.D.Ga.1997).

■ Under Georgia law, the property distributed to a spouse pursuant to an equitable division of property by decree of divorce becomes the sole and separate property of the recipient spouse. *Moore v. Moore*, 249 Ga. 27, 28, 287 S.E.2d 185, 186 (1982) (holding that status of property set aside as equitable property division not changed by former spouses' subsequent remarriage to each other and therefore not subject to equitable division in second divorce), *relied on in Hall v. Hall (In re Hall)*, 51 B.R. 1002, 1003 (S.D.Ga.1985) (ruling that percentage of pension proceeds awarded in equitable distribution by divorce decree is distributee's separate property); *see also Morrow v. Morrow*, 272 Ga. 557, 558, 532 S.E.2d 672, 673 (2000) (reaffirming holding in *Moore*, 249 Ga. at 28, 287 S.E.2d 185).

Here, Wife's property interest in the Net Proceeds of Chad's was fully vested prior to the date of Debtor's bankruptcy filing. By the terms of the settlement agreement incorporated into the Divorce Decree, Wife was to receive her designated portion regardless of whether Debtor lived or died and regardless of whether Chad's were sold or inherited. Wife needed only to remain alive until Debtor sold Chad's or until Debtor died to receive her vested share. As it happened, Debtor sold Chad's, and Wife's property interest in the Net Proceeds of Chad's was clearly vested, at the latest, upon the date of that sale. The issues that arose after that sale were regarding the *monetary value* of Wife's portion, but there was no issue as to Wife's *right* to her portion. Wife, fully vested and with the value determinable upon sale, needed to take no additional steps to realize the cash due her. I therefore find that Wife's property interest in the Net Proceeds was fully vested prior to Debtor's filing.

*2. Wife's attempts to force Debtor to deliver her property to her are matters that are more properly addressed in a state court of competent jurisdiction than in this bankruptcy forum.*

■ The interest of this Court in overseeing Debtor's bankruptcy case for the purposes which purportedly prompted his filing—his IRS concerns—is strong. This Court has no interest, however, in rewarding Debtor for his tenacious and ongoing attempts to deprive Wife of her rightful portion of the Net Proceeds realized in the sale of Chad's. A bankruptcy court may, in its discretion, abstain from addressing a particular matter where concerns of comity and judicial convenience outweigh federal bankruptcy concerns. *See Carver v. Carver*, 954 F.2d 1573, 1579 (11th Cir.1992). In that Debtor's actions prompted a Georgia court to find Debtor in willful contempt of its Order due to his clear attempts to mislead and avoid paying Wife her rightful share of her entitlement to the property, *see* Contempt Order, this Court's interest is overshadowed by considerations of comity with the Muscogee County Superior Court. That Court has power to enforce its Divorce Decree and its Contempt Order, and this Court shall retain no jurisdiction over matters related to Wife's efforts to realize her property. Accordingly, this Court abstains from ex-

ercising its jurisdiction as to Wife's portion of the Net Proceeds from the sale of Chad's.

### ORDER

Because Debtor did not file this case in good faith and because this Court abstains from exercising its jurisdiction as to Wife's entitlement to the Net Proceeds from the sale of Chad's, which was Debtor's primary purpose in filing, IT IS THE ORDER OF THIS COURT that the objection to confirmation by Marguerite Chadwick IS SUSTAINED. Debtor's case IS DISMISSED.